Beatrice M. PETERSON, Plaintiff, Appellee and Cross-Appellant,

v.

Gilman F. PETERSON, Defendant, Appellant and Cross-Appellee.

Civ. No. 10050.

Supreme Court of North Dakota.

Dec. 22, 1981.

Wheeler, Wolf, Peterson, Schmitz, Mc-Donald & Johnson, Bismarck, for plaintiff, appellee and cross-appellant; argued by Albert A. Wolf, Bismarck.

Mackoff, Kellogg, Kirby & Kloster, Dickinson, for defendant, appellant and cross-appellee; argued by Ward M. Kirby, Dickinson.

PEDERSON, Justice.

◼ The ultimate question presented in this case is whether or not the equitable powers of a court to make a just and proper distribution of properties during a divorce proceeding allow it to modify a separation agreement executed prior to the divorce action. We conclude that ordinarily it may not. The equitable powers of § 14–05–24,[1] NDCC, which allow the court to make a just and proper distribution of properties is not authorization to ignore or rewrite a validly written separation agreement absent statutory grounds for rescission. See Chapter 9–09, NDCC.

In 1978 Beatrice Peterson and Gilman Peterson entered into a separation agreement.[2] This agreement divided the real and personal property of the parties and provided for support for Beatrice. It was executed after 30 days of negotiations in which both parties were represented by qualified attorneys. As a consequence of these negotiations, preliminary drafts of the separation agreement were made and changed before the fifth and final agreement was executed by the parties on September 1, 1978. The final version expressly provided that the parties would be bound by all the terms of this agreement in the event of any future divorce proceedings. At the time the agreement was executed, however, the separation agreement was seen as an alternative to divorce.[3]

On May 16, 1979 Beatrice sued Gilman for divorce. Beatrice requested an equitable division of all properties acquired during marriage. Gilman answered the complaint and counterclaimed for absolute divorce. Gilman alleged that the 1978 agreement constituted a full and fair settlement of all property rights between the parties. After a trial, the court granted the divorce, stating in an interlocutory order, however, that

---

1. "14–05–24. Permanent Alimony—Division of property.—When a divorce is granted, the court shall make such equitable distribution of the real and personal property of the parties as may seem just and proper, and may compel either of the parties to provide for the maintenance of the children of the marriage, and to make such suitable allowances to the other party for support during life or for a shorter period as to the court may seem just, having regard to the circumstances of the parties respectively. The court from time to time may modify its orders in these respects."

2. The pertinent parts of the 1978 agreement which conclusively show the parties' intentions to be bound by this agreement are as follows:
"(15) Nothing herein contained shall be deemed to prevent either of the parties from maintaining a suit for absolute divorce against the other in any jurisdiction based upon any past or future conduct of the other, nor to bar the other from defending such suit. In the event that any such action is instituted, the *parties shall be bound by all of the terms of this Agreement.* If it is consistent with the rules of practice of the Court granting a decree of absolute divorce, the provisions of this Agreement, or the substance thereof, may be incorporated in such decree, but, notwithstanding such in-

corporation, this Agreement shall not be merged in such decree, but shall in all respects survive the same and be forever binding and conclusive upon the parties.

· · · · ·

"(17) The provisions of this Agreement and their legal effect have been fully explained to the parties by their respective counsel, and each party acknowledged that the Agreement is fair and equitable, that it is being entered into voluntarily, and that it is not the result of any duress or undue influence. The wife acknowledges that she has been furnished with all information relating to the financial affairs of the husband which has been requested either by her or by her counsel. This Agreement contains the entire understanding of the parties, and there are no representations, warranties, covenants, or undertakings other than those expressly set forth herein." [Emphasis added.]

3. The court concluded in its findings of fact: "That had they sought their divorce in 1978 the court, more than likely, would have approved and adopted their Agreement as being an equitable support and property division at that time."

it was not bound by the 1978 agreement.[4] The court then modified the terms of the agreement by granting additional properties to Beatrice. Both parties appealed from the judgment.[5]

## I.

North Dakota statutory and case law recognizes the right of the wife to contract with her husband.[6] *Riebe v. Riebe*, 252 N.W.2d 175 (N.D.1977). The 1978 agreement was a contract between Beatrice and Gilman.[7]

■ A property settlement agreement incorporated in a divorce decree may not be later modified by a trial court if it is intended to adjust finally all the property rights of the parties. *Sinkler v. Sinkler*, 49 N.D. 1144, 194 N.W. 817 (1923).[8] A provision of the agreement in this case expressly provides that it shall have final and binding effect in the event of divorce.

■ Beatrice claims that she is not bound by this contract because the agreement was not submitted to a court for judicial approval. Such an argument is without merit. It is desirable to submit the contract to the court only to relieve the parties of later proving that it was fairly executed. *Sink-* *ler v. Sinkler, supra.* The absence of judicial approval of the 1978 agreement is not the overriding consideration in this case. The major consideration should be to effectuate the parties' intentions. Here, the parties employed competent attorneys, negotiated with the express intention of finally adjusting their property rights, and agreed to be bound by the terms of this agreement in the event of divorce. It is evident from the agreement that the parties intended the 1978 agreement to be a final and binding division of their properties. The peaceful settlements of disputes, including divorce actions, are to be encouraged. *Galloway v. Galloway*, 281 N.W.2d 804 (N.D.1979). To allow the court to modify a contract under these circumstances would serve to discredit all contracts between a husband and wife when divorce proceedings are initiated. The court's authorization under § 14–05–24, NDCC, to make a just and equitable distribution of properties does not allow it to rewrite a valid contract absent statutory grounds governing rescission. See Chapter 9–09, NDCC.

We do not intend to imply that the alimony and support provisions of a separation

---

4. Beatrice contends that because Gilman did not appeal the trial court's interlocutory order, he is estopped from raising this issue on appeal. Such an argument is without merit. Gilman properly preserved this issue for appellate review.

5. Gilman appealed on the issue that the 1978 separation agreement was binding on the part of the trial court and that the court improperly modified the agreement. Beatrice appealed the trial court's decision on the ground that the court abused its discretion in not making a just and equitable property division notwithstanding the additional properties allowed her. Because we hold that the court was bound by the 1978 agreement, we need not consider whether or not the division of properties was just and equitable under § 14–05–24, NDCC. The trial court did not abuse its discretion in failing to award the wife one-half of the $85,000.00 proceeds of the sale of the farm machinery as the money is still subject to the terms of the agreement. Beatrice is also estopped from arguing that the 1978 agreement failed to dispose of the ownership of certain mineral rights. At the time the property was sold, Beatrice signed a contract and a deed, both of which specifically reserved the mineral rights unto Gilman alone.

6. "14–07–05. Rights and liabilities of married woman.—The wife after marriage has with respect to property, contracts, and torts the same capacity and rights and is subject to the same liabilities as before marriage, including liability to suit by her husband. In all actions by or against her, she shall sue and be sued in her own name."

"14–07–06. Contracts between husband and wife and third persons as to property.—Either husband or wife may enter into any engagement or transaction with the other or with other persons respecting property which either might enter into if unmarried."

7. Section 14–07–07, NDCC, recognizes the right of a husband and wife to agree in writing to an immediate separation and to make provisions for the support of either of them.

8. If the divorce decree results in a division of property, it may not be later modified by the courts. However, judgments relating to support or alimony of wife can be modified.

agreement may not be changed by a court when warranted by extraordinary circumstances. See *Nugent v. Nugent*, 152 N.W.2d 323, 331 (N.D.1967), where we distinguished *Sinkler v. Sinkler, supra. See also, Kack v. Kack*, 169 N.W.2d 111 (N.D. 1969).

The judgment is reversed in part and remanded for modification consistent with the agreement and this opinion.

ERICKSTAD, C. J., and VANDE WALLE, SAND and PAULSON, JJ., concur.