Shirley J. TIOKASIN, f/k/a Shirley J. Haas, Plaintiff and Appellee,

v.

Gary S. HAAS, Defendant and Appellant.

Civ. No. 10788.

Supreme Court of North Dakota.

June 27, 1985.

No appearance for plaintiff and appellee.

Howe & Seaworth, Grand Forks, for defendant and appellant; argued by Henry H. Howe.

LEVINE, Justice.

Gary S. Haas appeals from a district court judgment which modified the child support provisions contained in a judgment and decree which granted Shirley J. Tiokasin a divorce from him. We affirm.

Gary and Shirley were divorced on February 2, 1983. Shirley was awarded custody of the couple's two minor children, Tami Marie and Amanda Jean Haas, and Gary was ordered to pay child support in the amount of $150 per month for each child. Shirley subsequently remarried.

On January 16, 1984, Gary and Shirley entered into a "Stipulation to Modify Judgment"[1] which eliminated Gary's child support contribution. A hearing on Gary's motion to modify the divorce decree was held on June 6, 1984, during which Gary testified and the stipulation was introduced in evidence. Shirley was not represented by counsel and did not appear at the hearing. The district court refused to adopt the stipulation, but reduced Gary's child support payments to $62.50 per month for each child. Judgment was entered modifying the divorce decree accordingly, and Gary appealed.

The sole issue raised by Gary in this appeal is whether or not the district court erred in refusing to accept the parties' stipulation relieving Gary from his child support obligations contained in the original divorce decree.

■■■ Courts invested with the power to grant divorces and award child support have the power to change or modify the amount of child support to be paid whenever a proper showing has been made that the circumstances of the parties have materially changed. *E.g., Skoglund v. Skoglund*, 333 N.W.2d 795, 796 (N.D.1983); *Nygord v. Dietz*, 332 N.W.2d 708, 709–710

---

1. The stipulation provides:

"1. That inasmuch as the plaintiff, Shirley J. Haas, has remarried to Virgil Tiokasin, and that the plaintiff and her husband are well able to provide for the care and support of the minor children of the parties ... without present contribution by the defendant and, further, that it is the belief of the plaintiff that the best interests of the children will be served by amending the provision of the Judgment and Decree to vacate the requirement that the defendant, Gary S. Haas, presently contribute to support for the minor children of the parties, and;

"2. That it is stipulated and agreed that the present income and financial obligations of the defendant are such that it is difficult and/or impossible for him to make a present contribution to support for the minor children of the parties without undue hardship, and it further being agreed by the parties that the plaintiff's present income of approximately $18,000.00 per annum as a teacher at the Fort Totten School, when considered in conjunction with the fact that the plaintiff's husband is also earning approximately the same salary as a teacher at Fort Totten, it is agreed that the support that the plaintiff is able to give at this time is adequate and that no contribution is presently required by the defendant, all in accordance with NDCC § 14–09–08.

"WHEREFORE, THE PARTIES AGREE AND STIPULATE AS FOLLOWS:

"1. That paragraph 4 of the Judgment and Decree, providing that the defendant shall pay child support in the amount of $150.00 per month per child to the plaintiff, shall be vacated effective 1 February 1984 on the basis of the Stipulation of the parties that the plaintiff is both able and willing to provide for the support of the minor children of the parties without contribution by the defendant.

"2. That the District Court of Grand Forks County, North Dakota, shall have continuing jurisdiction over the parties and over all aspects of support, custody, and visitation until the children attain the age of 18 years, or are earlier emancipated. Upon a further application to the Court, by either party, the Court may enter such further order regarding child support, visitation, or custody as is required by the facts and circumstances of the case as presented to the Court upon such application.

"EACH PARTY AFFIRMS, BY THEIR SIGNATURE BELOW, THAT THEY HAVE READ AND UNDERSTAND THE PROVISIONS OF THIS STIPULATION, AND HAS RECEIVED A COPY OF THIS STIPULATION, AND BELIEVES THE TERMS AND PROVISIONS THEREIN TO BE EQUITABLE TO BOTH PARTIES AND IN THE BEST INTEREST OF THE CHILDREN OF THE PARTIES. PLAINTIFF FURTHER AFFIRMS THAT SHE IS AWARE OF HER RIGHT TO BE REPRESENTED BY COUNSEL IN THIS MATTER AND DOES NOT WISH TO BE SO REPRESENTED."

(N.D.1983). The primary factors to be considered by the court in fixing amounts of child support include each parent's earning ability, current financial circumstances and necessities, as well as the necessities of the children. *Heller v. Heller,* 367 N.W.2d 179, 182 (N.D.1985). Our standard of review of a trial court's disposition of a motion to modify the provisions in a divorce decree is governed by Rule 52(a), N.D.R.Civ.P. *E.g., Skoglund, supra; Corbin v. Corbin,* 288 N.W.2d 61, 64 (N.D.1980); *Becker v. Becker,* 262 N.W.2d 478, 481 (N.D.1978).

This court has often stated that a trial court is not bound to accept stipulations which purport to determine questions regarding the custody and care of the children of a marriage if it finds that it is not in the best interests of the children to do so. *See Malaterre v. Malaterre,* 293 N.W.2d 139, 142 (N.D.1980); *Mathisen v. Mathisen,* 276 N.W.2d 123, 129 (N.D.1979); *Becker, supra,* 262 N.W.2d at 480; *Voskuil v. Voskuil,* 256 N.W.2d 526, 529 (N.D. 1977); *Eisenbarth v. Eisenbarth,* 91 N.W.2d 186, 189 (N.D.1958); *Sinkler v. Sinkler,* 49 N.D. 1144, 1149, 194 N.W. 817, 819 (1923).

However, Gary asserts, in effect, that the district court erred as a matter of law in rejecting the parties' stipulation because, under *Peterson v. Peterson,* 313 N.W.2d 743 (N.D.1981), there exist no "extraordinary circumstances" for doing so. In *Peterson,* we held that a court's authority under § 14–05–24, N.D.C.C., to make a just and equitable distribution of property does not allow the court to rewrite a valid written separation agreement absent statutory grounds for rescission under Chapter 9–09, N.D.C.C. We noted, however, that the decision was not intended "to imply that the alimony and support provisions of a separation agreement may not be changed by a court when warranted by extraordinary circumstances." *Peterson, supra,* 313 N.W.2d at 745–746.

*Peterson* is clearly distinguishable. *Peterson* involved an agreement between a husband and wife concerning property division. It did not involve an agreement pro-

viding for payment of child support. The difference between a stipulated agreement concerning distribution of marital property and one concerning payment of child support is significant. While the former serves primarily to determine the interests of the contracting parties themselves, the latter directly affects the interests of the children of the marriage, who have the most at stake as a result of such an agreement but who have the least ability to protect their interests.

■ In effect, *Peterson* simply recognized the right of husband and wife to contract with each other. It did not decide, and is therefore not determinative of, the present issue of whether or not divorced parents have unrestricted authority to eradicate the noncustodial parent's obligation to pay child support. Resolution of this issue involves weighing the rights of divorced parents to regulate their children's lives with the duty and authority of the courts to monitor the best interests of those children when called upon to adjudicate issues of child support.

■ The statutes of our state set forth a strong public policy requiring the courts to assure the proper support and maintenance of minor children. *See Mathisen v. Mathisen,* 276 N.W.2d 123, 128 (N.D.1979). We fail to see how this policy would be compatible with one by which courts would essentially be bound by agreements between former spouses which could adversely affect the rights and interests of their children. Because a parental stipulation relating to child support is a legitimate incident of parental authority and control, it is entitled to serious consideration by the court. But such a stipulation need be accepted by the court only if, in the exercise of the court's judgment, it is deemed consonant with the child's best interests. To give a parental stipulation conclusive effect would abrogate the courts' traditional duty, arising from statute and case law, to independently monitor the best interests of the children of divorce. This we decline to do. *Peterson* does not alter prior pronouncements of this court that trial courts are not

bound to accept stipulated agreements purporting to settle custody and child support questions if the court determines that the stipulation is not in the best interests of the children.[2]

We also note that this court's decision in *Aaker v. Aaker*, 338 N.W.2d 645 (N.D. 1983), does not require a contrary conclusion. In *Aaker*, the original divorce decree gave the mother custody of the child and ordered the father to pay $50 per month child support. The mother subsequently moved the court to increase the child support to $250 per month. At the hearing on the motion, during which both parties were represented by counsel, the parties orally stipulated to increase the amount of child support to $100 per month. The trial court approved the stipulation regarding the $100 per month payments from February through April 1983, but increased the child support payments to $150 per month commencing in May 1983. We remanded the case for the purpose of amending the judgment to conform to the stipulation, concluding that the court, after accepting the stipulation, erred by going beyond its terms without first giving notice to the parties. This court stated:

"We have no reservations on the proposition that the court has the authority to

either accept or reject a stipulation. But adding to it without first informing the parties or obtaining the consent of the parties to the stipulation is another matter." *Aaker, supra*, 338 N.W.2d at 647.

*Aaker* is also distinguishable. In *Aaker*, the trial court not only failed to give notice of its addition to the stipulation, but also failed to obtain the consent of the parties to such addition. The failure to give notice foreclosed the parties from presenting any evidence in support of their stipulation. The resultant prejudice is obvious. In the present case, although the district court explicitly rejected the stipulation at the close of the hearing, Gary had already given evidence in support of the stipulation. While he failed to persuade the trial court, he nevertheless had the opportunity to present his case. Gary suffered no prejudice. Further, the trial court offered Gary the alternative of having the judgment modified by lowering the total child support payments to $125 per month. Gary consented to that modification.

■ We note also that *Aaker* involved a stipulation to increase the amount of child support rather than to delete it in its entirety. Furthermore, the mother and father in *Aaker* were both represented by counsel and present in court. Where, as in this

---

2. The decisions from other jurisdictions relied upon by Gary are not inconsistent with the principle that the best interests of the children are a paramount concern and may preclude judicial acceptance of such an agreement. *See Malekos v. Chloe Ann Yin*, 655 P.2d 728, 730 (Alaska 1982) ["[A] waiver freely executed by the custodial parent can be asserted by the non-custodial parent to bar recovery of child support arrearages, absent a finding that such a result would be deleterious to the child."]; *Hill v. Hill*, 106 Colo. 492, 496, 107 P.2d 597, 598 (1940) ["[W]hile the court is not necessarily bound by the agreement, if its terms are fair and no fraud attends its execution, it may be recognized by the court."]; *Bartlett v. Bartlett*, 70 Ill.App.3d 661, 663, 27 Ill.Dec. 329, 330, 389 N.E.2d 15, 16 (1979) ["We have searched the record and can find nothing to indicate that as a result of this agreement the children were left in want or lacked in any way for either material needs or parental guidance."]; *Anthony v. Anthony*, 204 N.W.2d 829, 832–833 (Iowa 1973) ["We have conditioned approval of agreements to waive child support upon the best interest of

the child not being injured thereby."]; *Merkel v. Merkel*, 247 Iowa 495, 500, 73 N.W.2d 75, 77 (1955) ["Reasonable child support was not disturbed or diminished" as a result of parties' agreement.]. *See generally* Annot., 100 A.L.R.3d 1129 (1980).

To the extent that the court's decision in *Seifert v. Seifert*, 374 So.2d 157 (La.Ct.App.1979), can be interpreted to stand for the proposition that the interests of the children are irrelevant to a determination of whether or not a court may approve a waiver of child support payments, we find it unpersuasive and in conflict with the Louisiana Supreme Court's decision in *Dubroc v. Dubroc*, 388 So.2d 377, 380 (La.1980) ["[A]n agreement by a parent to suspend his right to receive child support payments will not be enforced unless it meets the requisites for a conventional obligation and fosters the continued support and upbringing of the child. To allow the parent to suspend his right to receive support payments under circumstances contrary to the child's interests, would be inimical to the ultimate goal of support and upbringing of the child."].

case, a court is presented with a stipulation relieving the noncustodial parent of his child support obligation, and the custodial parent has neither been represented by counsel in the negotiations nor has even appeared at the hearing on the matter, the court must of necessity view the stipulation with caution.[3]

Gary contends that approval of the stipulation would not be contrary to the best interests of his children. More specifically, he asserts that because Shirley and her present husband have a joint income of approximately $36,000, and because Shirley stipulated that the support she is able to give the children is presently adequate, under the provisions of § 14–09–08, N.D. C.C.,[4] he should not be required to pay the child support ordered. Section 14–09–08, N.D.C.C., provides:

"*14–09–08. Mutual duty to support children.* The parent entitled to the custody of a child must give the child support and education suitable to the child's circumstances. If the support and education which the custodial parent of a legitimate child is able to give are inadequate, the other parent must assist the custodial parent to the extent of his or her ability."

The district court's written findings of fact do not contain a finding that the support Shirley is able to give to the children is inadequate or that there is presently a need for Gary's child support payments. However, we have held that a transcribed oral opinion may serve as the source of findings to satisfy the requirements of Rule 52(a),

N.D.R.Civ.P. *Soby Const., Inc. v. Skjonsby Truck Line,* 275 N.W.2d 336, 341 (N.D. 1979); *see also Becker v. Becker,* 262 N.W.2d 478, 481 (N.D.1978). This is especially true when, in the interest of judicial economy, it would serve no useful purpose to remand for the preparation of more adequate findings. *See Voskuil v. Voskuil,* 256 N.W.2d 526, 530 (N.D.1977). It is apparent from the transcript that the trial court found a need for the continued child support payments, and therefore implicitly found that the support Shirley would be able to provide the children without such payments would be inadequate.

The trial court stated:

"THE COURT: I will not be able to accept the stipulation as proposed. I feel in this circumstance that Mr. Haas is able to pay support for the children. It appears that the mother of the children has been asking for some support occasionally, anyway, which would tend to indicate a need for some support."

The trial court's determination of the need for continued payments is supported by Gary's own testimony that he had spoken with Shirley on the morning of the hearing and that she had requested "some money." Gary testified that he intended to give her between $200 and $300 as a result of the request.

The record establishes that Gary earns approximately $20,000 annually and that, considering his current financial obligations, payment of $125 per month total

---

3. While we do not suggest that Shirley was coerced or fraudulently induced into entering the stipulation, we do note Shirley's written response to Gary's appeal from the district court's judgment. In a letter to the Clerk of this court, Shirley stated:

"At this point—my personal feelings are to have the judgment that was handed down by Judge Medd in June to be upheld. I feel that $125/mo for two children is very reasonable. I also feel that these payments should go through the clerk of court. .

"Our battle over child support has spanned a four year period—including several hearings—I do not want to spend any more money on lawyers."

4. We note that § 14–09–08, N.D.C.C., was amended by the 1985 Legislature. *See* 1985 N.D.Sess.Laws Ch. 196, § 1 (House Bill 1509, signed by the Governor on March 27, 1985). Effective July 1, 1985, the amended version of § 14–09–08 provides:

"*14–09–08. Mutual duty to support children.* Parents must give their children support and education suitable to the child's circumstances."

We express no opinion regarding the effect of the 1985 amendment to § 14–09–08 on the issue raised in this case.

support for his two children will not create an undue hardship for him.

We hold that the trial court did not err as a matter of law in rejecting the stipulation, and that the trial court's order requiring Gary to continue to pay $125 per month child support is not clearly erroneous. Accordingly, the judgment is affirmed.

ERICKSTAD, C.J., and VANDE WALLE, GIERKE and MESCHKE, JJ., concur.