Kenneth CRAWFORD, Plaintiff
and Appellee,

v.

Leslie Faye CRAWFORD, Defendant
and Appellant.

Civ. No. 940080.

Supreme Court of North Dakota.

Dec. 2, 1994.

Mark Kelly Clark (argued), Grand Forks,
for plaintiff and appellee. Appearances by

David D. Dusek, Grand Forks, co-counsel and Caroline Clark, Law Clerk.

Patti J. Jensen (argued), of Lindquist & Jeffrey, East Grand Forks, MN, for defendant and appellant.

LEVINE, Justice.

Leslie Crawford appeals from a district court order denying her motion to vacate a divorce judgment which was entered upon a stipulated agreement between Leslie and her former husband, Kenneth Crawford. We conclude the trial court abused its discretion in refusing to set aside the divorce judgment. We reverse and remand.

Kenneth and Leslie were married in 1978 and had four children who, at the time of the divorce, were ages 14, 12, 10, and 6. During the marriage, Kenneth earned a medical degree and completed his internship and residency. Leslie earned an Associate of Arts degree in Criminal Justice and a Bachelor of Arts degree in Social Sciences. In December 1992, the family moved from Grand Forks to Cavalier, where Kenneth accepted a position as a family practice physician with the Pembina County Hospital. At the time of their divorce, Kenneth was earning about $130,000 per year. Leslie took a job as a meat wrapper, and was earning $300 per month at the time of the divorce.

Shortly before moving to Cavalier, Kenneth told Leslie he intended to soon terminate the marriage. Nevertheless, Kenneth and Leslie purchased a home in Cavalier. In March 1993, Kenneth filed an action for divorce. Kenneth moved out of the home into a rental apartment, and Leslie remained in the home with the children. Before the divorce was final in June 1993, Kenneth moved back into the home with the children and Leslie moved to Kenneth's rental apartment. By affidavit, Leslie explains why she allowed Kenneth to do that:

> "Kenneth came to me and convinced me to move from our marital home. He convinced my [sic] by telling me that we had received a Notice of Foreclosure and that

if I did not move so that he could live in the home and pay the bills, we would lose our home as well as our vehicle.

> "I believed him. I saw no other alternative. The foremost thought in my mind was for my children to remain in their home. As a child, I never experienced a permanent home and neither had my children.

> "I wanted to assure that they could remain in their home and believed the only way to achieve that would be for Kenneth to move into the home."

Kenneth concedes he told Leslie they might lose the home. He asserts Leslie was failing to pay monthly bills and that he could not pay those bills and also continue to make house payments. But, Kenneth did not disclose that at the same time he was pleading financial distress, he was contributing generously to the support and entertainment of his companion and her children from a prior marriage.

When Kenneth filed for divorce, Leslie promptly secured the services of an attorney. While the action was pending, Leslie decided to dismiss her attorney and enter a stipulated settlement of the divorce. She explains:

> "I believe, in my heart, that my decision to sign the Settlement Agreement was based upon the threats regarding our home and believing there was no way to protect my children other than to succumb to Kenneth's demands."

■ If Leslie had retained her attorney throughout the proceedings, she likely would have fared much better. In awarding spousal support, the trial court should consider a variety of factors, including the needs of the party disadvantaged by the divorce and the supporting spouse's ability to pay. *E.g., Sateren v. Sateren*, 488 N.W.2d 631 (N.D.1992). The court should also consider the disparate earning capacities of the parties. *E.g., Wiege v. Wiege*, 518 N.W.2d 708 (N.D.1994). Of equal importance is a spouse's role in contributing to the other spouse's earning capac-

ity which was developed and enhanced during the course of the marriage. *E.g., Culver v. Culver,* 497 N.W.2d 431 (N.D.1993). Doubtless, Leslie's attorney would have highlighted the disparity in Kenneth and Leslie's earning abilities and Leslie's contribution to Kenneth's acquisition of a medical degree, in his efforts to have the court ameliorate the disparity and compensate Leslie with either rehabilitative or permanent spousal support or some combination of both. However, Leslie dismissed her attorney and came into court with a stipulation signed by her without benefit of counsel. No evidence was presented of Kenneth's income or other circumstances attending the marriage and divorce.[1]

The trial court entered a judgment based upon the stipulation. Kenneth was awarded custody of the four children. Leslie was given visitation rights and ordered to pay $15 per month in child support. Kenneth received the home, and he assumed the mortgage on it. Their personal property was split between them under the stipulation and is not at issue on this appeal. Kenneth agreed to pay for Leslie's 1988 van, to pay $250 per month spousal support for a six-month period, and to pay Leslie's attorney fees. There was no appeal.

About five months after the divorce judgment was entered, Leslie retained an attorney and filed a motion under Rule 60(b), N.D.R.Civ.P., for relief from the judgment. She filed an affidavit in support of her motion, stating that she was coerced into signing the stipulation and that she had a brain tumor in 1990 which, though treated successfully by surgery, rendered her incapable of fully understanding the legal effect of the stipulation. Following a hearing on the motion, the district court concluded that Leslie is "an intelligent person with a college degree and I have no medical evidence as to

incapacitation or memory lapses or whatever it is." In its order denying the motion to vacate the divorce judgment, the court found no evidence of "fraud, deceit, coercion, or misrepresentation" by Kenneth.[2]

■ In reviewing a trial court's denial of a motion brought under Rule 60(b), N.D.R.Civ. P., to set aside a regularly entered judgment, we do not determine if the trial court was substantively correct in entering the judgment from which relief is sought, but determine only if the trial court abused its discretion in ruling that sufficient grounds for disturbing the finality of the judgment were not established. *Clooten v. Clooten,* 520 N.W.2d 843 (N.D.1994).

■ Leslie argues the stipulation was so one-sided and unjust that it must be deemed the product of either Kenneth's overreaching or Leslie's incapacity to understand it. We agree that the stipulation is so one-sided and creates such hardship that it is unconscionable. Under the stipulation, Kenneth retained almost all of his $130,000 income and acquired custody of the couple's four children, whose primary care Leslie had provided throughout Kenneth's lengthy education and training. Leslie, having survived the brain tumor, acquired a degree that to date has not provided her with earnings of more than $3,600 annually.

■ The trial court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner. *Dvorak v. Dvorak,* 329 N.W.2d 868 (N.D.1983). We have said that a trial court has no duty to investigate the terms of a stipulated agreement to determine that it is objectively fair and equitable. *Wolfe v. Wolfe,* 391 N.W.2d 617, 620 (N.D. 1986). While that may be a stronger statement than intended, it reflects the strong

---

1. Our child support guidelines are based upon the obligor income model. Consequently, Leslie's income was relevant for determining her support obligation. However, the guidelines did not require disclosure of Kenneth's income, because Kenneth, as the custodial spouse under the stipulation, was not obligated to make support payments.

2. The Honorable Lee A Christofferson, district judge, heard the Rule 60(b), N.D.R.Civ.P., motion for relief but did not take part in the original divorce proceedings.

public policy in favor of prompt and peaceful resolution of disputes. It is the promotion of that public policy that generates a judicial bias in favor of the adoption of a stipulated agreement by the parties. *See Fleck v. Fleck,* 337 N.W.2d 786, 791–792 (N.D.1983); *see also Clooten, supra; compare with Tiokasin v. Haas,* 370 N.W.2d 559 (N.D.1985) (trial court not bound by parents' stipulation on child support). However, when it is disclosed that a judgment is so blatantly one-sided and so rankly unfair under the uncovered circumstances that courts should not enforce it, notwithstanding that the parties have stipulated its terms, Rule 60(b)(vi), N.D.R.Civ.P., provides the ultimate safety valve to avoid enforcement by vacating a judgment "to accomplish justice." *Cf. Kinsella v. Kinsella,* 181 N.W.2d 764, 769 (N.D. 1970). *See also Cliche v. Cliche,* 143 Vt. 301, 466 A.2d 314 (Vt.1983). Marriage involves a confidential relationship, and the law should not permit one marital partner to take "unconscientious advantage" over the other through the trust which is part of that relationship. *See Barker v. Barker,* 75 N.D. 253, 27 N.W.2d 576, 578 (1947).

In *Cliche,* the Supreme Court of Vermont approved the trial court's use of Rule 60(b)(vi), N.D.R.Civ.P., to vacate a divorce judgment based upon an unconscionable stipulation. In vacating the unconscionable judgment, the court stated that relief under the rule "is, by its very nature, invoked to prevent hardship or injustice and thus is to be liberally construed and applied." *Cliche, supra,* 466 A.2d at 316.

Whether a party has agreed to the terms of a stipulation becomes irrelevant in light of the damage enforcement of an unconscionable decree would do to the duty and reputation of courts to do justice. Just as courts will not enforce an agreement that is illegal, so too courts should vacate judgments that are unconscionable. Rule 60(b)(vi), N.D.R.Civ.P., is available for just such a rare occasion and exceptional circumstance. *See, e.g., Cliche, supra.*

Leslie did not expressly rely on Rule 60(b)(vi), N.D.R.Civ.P., in her motion to va-

cate. Nonetheless, her arguments to the district court were replete with entreaties to rid the process of a judgment that, by its terms, was so unfair, it should not be allowed to stand. We agree. We reverse and remand for the court to conduct a hearing and consider evidence on the disputed issues of spousal maintenance and child custody.

VANDE WALLE, C.J., and MESCHKE, J., concur.

NEUMANN, Justice, dissenting.

For many years this Court has held that a trial court's authority to make a just and equitable distribution of property under NDCC section 14–05–24 does not allow the court to rewrite a val'd separation agreement, unless there are statutory grounds for rescission under NDCC chapter 9–09. *Wolfe v. Wolfe,* 391 N.W.2d 617 (N.D.1986) (citing *Peterson v. Peterson,* 313 N.W.2d 743 (N.D. 1981)). NDCC section 9–09–02(1) permits rescission if a party's consent was given by mistake or obtained through duress, menace, fraud, or undue influence.

In this case the trial court which reviewed Leslie's motion to vacate the divorce judgment found that Leslie was "an intelligent person with a college degree," and that there was "no medical evidence as to incapacitation or memory lapses...." The court also explicitly found there was no evidence of "fraud, deceit, coercion, or misrepresentation" by Kenneth.

In reviewing a trial court's denial of a Rule 60(b) motion to set aside a regularly entered judgment, this Court will not determine if the trial court was substantively correct in entering the judgment from which relief is sought. We will determine only whether the trial court abused its discretion in ruling that sufficient grounds for disturbing the finality of the judgment were not established. *Clooten v. Clooten,* 520 N.W.2d 843 (N.D.1994).

Here the majority grants a perfunctory nod to the trial court's determination that there were no grounds for rescission, to our standard of review, and to our prior law.

Then, however, it ignores all three, and instead retries the case upon a cold record, and applies a standard of unconscionability. Further, the majority seems to apply its unconscionability standard not to the trial court's decision on the motion, but rather to the underlying stipulation of the parties.

While the facts in this case, especially as presented by Leslie in her appeal, seem to cry out for some sort of wise and kindly intervention, the truth is that such an intervention can be accomplished in this case only by a *de novo* review of the record, and by overturning our prior law. The majority's disregard of our standard of review and its application of a nebulous unconscionability standard invites, even compels, judges to patronizingly and paternalistically meddle in the proposed stipulations of presumptively competent divorcing adults, with very little guidance or principle other than our own personal sense of what feels fair and right. That strikes me as the very essence of a government of people, rather than a government of laws. When the outcome of a case can depend not upon rules, laws and standards of review, but upon what strikes appellate judges as fair and equitable, then this Court has assumed more power than wise people ought to be comfortable exercising.

Despite my own impression that Leslie has been left with the very short end of this marital stick, I cannot conclude that the trial court which denied her Rule 60(b) motion acted arbitrarily, capriciously, unreasonably or unconscionably in doing so. While I, too, long to relieve her of the bad consequences of her hasty decisions, I am not willing to let this hard case make bad law. I therefore, respectfully, dissent.

SANDSTROM, J., concurs.