1999 ND 11

Ruby V. WEBER n/k/a Ruby V. Moos,
Plaintiff and Appellant,

v.

Herbert WEBER, Defendant
and Appellee.

Civil No. 980063.

Supreme Court of North Dakota.

Jan. 27, 1999.

Thomas M. Tuntland, Mandan, for plaintiff and appellant.

Irvin B. Nodland, Irvin B. Nodland, P.C., Bismarck, for defendant and appellee.

SANDSTROM, Justice.

[¶ 1] Ruby Moos [1] appealed from the judgment of the district court vacating the property settlement agreement between her and Herbert Weber. The district court found the agreement unconscionable and set it aside in its entirety. We affirm, concluding the district court did not err in finding the agreement unconscionable.

I

[¶ 2] Moos and Weber were married on September 13, 1995. Twenty-seven days later, Moos retained an attorney to begin a divorce action. Moos signed a property settlement agreement at a meeting with Weber on October 12, 1995. Weber was not represented by counsel. Moos was represented by attorney Thomas Bair, who advised Weber he represented only Moos and Weber should retain his own attorney. Weber declined to retain his own attorney and signed the document after reviewing it. The property settlement agreement was accompanied by a quitclaim deed giving Moos ownership of a condominium worth about $70,000 and owned by Weber prior to the marriage.

[¶ 3] The property settlement agreement was filed in district court on October 16, 1995. Also on October 16, Weber retained an attorney and moved the district court to set aside the property settlement agreement, including the quitclaim deed executed in conjunction with it. On October 20, 1995, Weber filed a motion to repossess the condominium, and on October 24, 1995, Weber filed a motion of lis pendens with the district court.

[¶ 4] In denying Weber's motions, the district court found Weber was able to act independently of the plaintiff and freely to protect his own interests. The district court also found no mistake, fraud, or undue duress. Weber appealed from the district court's judgment.

[¶ 5] In, *Weber v. Weber*, 548 N.W.2d 781 (N.D.1996), we remanded to the district court, saying its analysis and ruling were too narrow. In reviewing the property settlement agreement giving substantial property to Moos, the district court limited its review

---

1. Ruby Moos became Ruby Weber, and is now known again as Ruby Moos.

to the contractual capacity of the parties and to whether the contract was entered freely and knowingly, without fraud, duress, menace or undue influence, or genuine mistake of fact or law. We concluded the district court should have considered whether the property settlement agreement was unconscionable.

[¶ 6] On remand, the district court addressed three issues for unconscionability. First, was the property settlement agreement "one-sided"? Second, did the agreement create a hardship on either party? And third, given the station in life of each of the parties, and considering the *Ruff–Fischer* guidelines for property division, was the agreement fair, just, and proper? Applying these, the district court found the October 12, 1995, property settlement agreement between Ruby Moos and Herbert Weber unconscionable, and set it aside in its entirety. Moos appealed.

[¶ 7] The district court had jurisdiction under N.D.C.C. § 27–05–06. Moos's appeal is timely under N.D.R.App.P. 4(e). This Court has jurisdiction under N.D. Const. art. VI, § 6, and N.D.C.C. § 28–27–01.

## II

### A

[¶ 8] Both parties agree the "clearly erroneous" standard applies. Although the question of unconscionability is one of law, factual findings are necessary for the determination. *See Matter of Estate of Lutz,* 1997 ND 82, ¶ 46, 563 N.W.2d 90. A finding of fact is clearly erroneous if it has no support in the evidence, or even if there is some supporting evidence, the reviewing court is left with a definite and firm conviction a mistake has been made, or the decision was induced by an erroneous view of the law. *Great Plains Supply Co. v. Erickson,* 398 N.W.2d 732, 735–36 (N.D.1986).

### B

[¶ 9] When a divorce is granted, N.D.C.C. § 14–05–24 requires a trial court to "make such equitable distribution of the real and personal property of the parties as may seem just and proper." In doing so, however, we have encouraged district courts to recognize valid agreements between divorcing parties. *Crawford v. Crawford,* 524 N.W.2d 833, 835–36 (N.D.1994); *Clooten v. Clooten,* 520 N.W.2d 843, 846 (N.D.1994); *Peterson v. Peterson,* 313 N.W.2d 743, 744–45 (N.D.1981). The public policy on divorce favors a "prompt and peaceful resolution of disputes." *Clooten,* at 846 (quoting *Wolfe v. Wolfe,* 391 N.W.2d 617, 619 (N.D.1986)). "[T]o the extent that competent parties have voluntarily stipulated to a particular disposition of their marital property, a court ordinarily should not decree a distribution of property that is inconsistent with the parties' contract." *Wolfe,* 391 N.W.2d at 619.

[¶ 10] District courts should not, however, blindly accept property settlement agreements. *See Clooten,* 520 N.W.2d at 845–46; *Crawford,* 524 N.W.2d at 836; *In re Marriage of Manzo,* 659 P.2d 669, 674 (Colo. 1983); Principles of the Law of Family Dissolution: Analysis and Recommendations, Tentative Draft No. 2, A.L.I. § 4.01 comment (1996) (stating "[a]greements between spouses have traditionally been subject to various procedural and substantive rules beyond those which apply to contracts generally"). We have noted the district court's duty to make a just and proper distribution of property under N.D.C.C. § 14–05–24 includes the authority to rewrite a property settlement agreement for mistake, duress, menace, fraud, or undue influence under N.D.C.C. § 9–09–02(1). *See Wolfe,* 391 N.W.2d at 619.

[¶ 11] We have also held a district court should not enforce an agreement if it is unconscionable. *Crawford,* 524 N.W.2d 833, 835 (stating "the stipulation is so one-sided and creates such hardship that it is unconscionable"). *See also* Uniform Marriage and Divorce Act, 9A U.L.A. 306(b) (1998) (stating "the terms of a separation agreement . . . are binding upon the court unless it finds, after considering the economic circumstances of the parties and any other relevant evidence produced by the parties, on their own motion or on request of the court, that the separation agreement is unconscionable"). *See also In re Marriage of Brown,* 283 Mont. 269, 940 P.2d 122, 124 (1997) (the district court has discretion to determine whether

the agreement is unconscionable); *Squirts v. Squirts,* 201 W.Va. 30, 491 S.E.2d 30, 33 (1997); *Wilson v. Neppell III,* 253 A.D.2d 493, 677 N.Y.S.2d 144, 145 (N.Y.1998); *Brennan v. Brennan,* 955 S.W.2d 779, 784 (Mo.Ct. App.1997). Unconscionability is a doctrine by which courts may deny enforcement of a contract "because of procedural abuses arising out of the contract formation, or because of substantive abuses relating to terms of the contract." Black's Law Dictionary, 6th Ed., 1524.

■ [¶ 12] Therefore, district courts should make two findings when considering whether a settlement agreement between divorcing parties should be enforced. The first inquiry is whether the agreement is free from mistake, duress, menace, fraud, or undue influence under N.D.C.C. § 9–09–02(1). *See Wolfe,* 391 N.W.2d at 619. On remand, the district court stated:

> [T]he Court has determined in its previous judgment that the parties and their resulting agreement did not occur as the result of fraud, deceit, misrepresentation, or mistake of law or fact. Further, that the Supreme Court decision herein did not reverse the Court's findings thereon. Accordingly, the trial court is left to determine whether or not the result of the property settlement agreement of the parties is unconscionable.

The district court did not err in finding the agreement free from mistake, duress, menace, fraud, or undue influence. The inquiry does not, however, end there.

■ [¶ 13] The district court's second inquiry is whether the agreement is unconscionable. The district court found the result of the property settlement agreement of Moos and Weber unconscionable. The court first found the agreement to be "one-sided," based on the brevity of the marriage, the additional assets of $75,000 Moos received during the brief marriage, the gifts given to Moos by Weber in this very short marriage, and Weber giving up his only residence. See, *Crawford* 524 N.W.2d at 836.

[¶ 14] Moos argues the district court was clearly erroneous in this finding. In support, she cites, *Crawford,* 524 N.W.2d 833. In,

*Crawford,* we found the agreement "so blatantly one-sided and so rankly unfair," it was unenforceable. *Id.* at 836. In *Crawford,* the wife did not get any of the husband's $130,-000–a–year salary, nor did she get custody of the children. *Id.* at 835. At the time of the divorce, she was left with a degree that provided her with earnings of only $3,600 per year. Because *Crawford* is the only North Dakota domestic relations case to discuss one-sidedness, Moos relies on its language. She argues the agreement between her and Weber must be perceived as more than unfair or "one-sided," it must be "blatantly one-sided" and "rankly unfair," citing language from *Crawford.*

[¶ 15] Although the district court does not call the agreement between Moos and Weber "rankly unfair" or "blatantly one-sided," that does not mean it could not have been described as such. The agreement left Weber with far less than he brought into the one-month marriage. This appears to be the kind of agreement no rational, undeluded person would make, and no honest and fair person would accept. *See Skotnicki v. Skotnicki,* 237 A.D.2d 974, 654 N.Y.S.2d 904, 905 (1997) (describing an unconscionable agreement). The district court did not err in finding the agreement one-sided. Whether it was characterized as "rankly" or "blatantly" one-sided is not important.

[¶ 16] The district court's second finding on unconscionability was that the agreement created a greater hardship on Weber. Weber gave up his condominium and lost his household furnishings, and he would have had to expend a substantial portion of his retirement assets to replace the condominium. Moos, on the other hand, could resume renting an apartment comparable to her previous accommodations without reducing her assets. Moos argues the agreement allowed Weber to retain 73% of the marital estate. This argument fails, however, to consider Weber brought nearly 100% of the estate into the one-month marriage. The district court did not err in finding the agreement placed a greater hardship on Weber.

■ [¶ 17] Finally, the district court applied the *Ruff–Fischer* guidelines and found the agreement "unfair and unjust un-

der the circumstances with respect to [Weber]."[2] Traditionally, the *Ruff–Fischer* guidelines are applied in divorce cases to distribute property of divorcing spouses, absent an agreement. While *Ruff–Fischer* is not the standard in a domestic relations case to determine unconscionability of a settlement agreement of divorcing parties, it is appropriate for a district court to consider. The *Ruff–Fischer* guidelines are proper because a domestic relations agreement should not be scrutinized in the same way as a business contract. Thus, the district court did not err in applying *Ruff–Fischer* to determine unconscionability.

[¶ 18] The haste with which the agreement was entered and the involvement of only one attorney is also troubling. The action by Weber to rescind immediately after having signed the agreement is also persuasive. As we said in *Peterson v. Peterson*, 555 N.W.2d 359, 362 (N.D.1996), a "stipulation in a divorce proceeding which occurs this rapidly with the use of one attorney and under serious threats of harm to one of the parties should be viewed with great skepticism." Although there were no serious threats of physical harm, Weber was under strain from the threat of losing considerably more of his life's earnings if he did not sign the agreement. The skepticism we noted in *Peterson* was correctly applied to this agreement.

### III

[¶ 19] The district court did not err in finding the agreement unconscionable. The decision of the district court is affirmed.

[¶ 20] VANDE WALLE, C.J., and NEUMANN and MARING, JJ., concur.

[¶ 21] The Honorable CAROL RONNING KAPSNER was not a member of the Court when this case was heard and did not participate in this decision.

---

2. The *Ruff–Fischer* guidelines are applied to distribute property in a divorce in the absence of an ante- or postnuptial agreement. Considered under the *Ruff–Fischer* guidelines are: " 'the respective ages of the parties, their earning ability, the duration of the marriage and conduct of the parties during the marriage, their station in life, the circumstances and necessities of each, their health and physical condition, their financial circumstances as shown by the property owned at the time, its value at the time, its income-producing capacity, if any, whether accumulated before or after the marriage, and such other matters as may be material.' " *Van Klootwyk v. Van Klootwyk*, 1997 ND 88, ¶ 14, 563 N.W.2d 377 (quoting *Weir v. Weir*, 374 N.W.2d 858, 862 (N.D. 1985)).