2006 ND 64

**Cheryl Rae KRAMER, Plaintiff and Appellee**

v.

**Kenneth Leroy KRAMER, Defendant and Appellant.**

**No. 20050222.**

Supreme Court of North Dakota.

March 29, 2006.

Samuel S. Johnson, Johnson Law Office, Ltd., Wahpeton, N.D., for plaintiff and appellee.

Tracey R. Lindberg, Tracey R. Lindberg Law Firm, Breckenridge, MN, for defendant and appellant.

SANDSTROM, Justice.

[¶ 1]  Kenneth Kramer appeals from a divorce judgment that incorporated a property settlement agreement between Cheryl Kramer and him.  He argues the district court erred in failing to review the settlement agreement for unconscionability, erred in enforcing the agreement, and erred in issuing a protective order.  We affirm.

I

[¶ 2]  In May 2002, Cheryl Kramer and Kenneth Kramer signed a "legal separation agreement/property settlement agreement" that provided:

9.  *SUBSEQUENT DIVORCE.* Nothing herein contained shall be deemed to prevent either of the parties from maintaining a suit for absolute dissolution of marriage against the other in any jurisdiction based upon any past or future conduct of the other nor bar the other from defending any such suit. The husband and wife agree that the husband was served with a Summons and Complaint seeking a divorce, and the wife agrees to not prosecute said Complaint until providing notice in writing to the husband that she does intend to dissolve the marriage, giving him at least twenty (20) days notice before proceeding on the same, said notice to be provided to the husband by certified mail, return receipt requested, or by personal service, if necessary.

Both parties further agree that, in the event the wife shall seek a divorce, after proper notice has been given, that this Legal Separation Agreement shall act as a Property Settlement Agreement and may be submitted to the Court as such. At the time this Agreement is entered into, both the husband and wife contemplate that a divorce may subsequently be granted. In the event that such divorce is granted, they hereby stipulate and agree that the applicable Court shall distribute property, apportion bills and obligations and specifically the Court shall carry out all terms of this entire Agreement.

Both parties agree that the property of the parties shall be divided by the parties such that the wife receives the property listed in Exhibit I, and the husband receives the property listed in Exhibit II. The parties further agree to the special terms and conditions listed in Exhibit III. The parties agree that the debts, bills and other obligations of the parties shall be divided as listed in Exhibit IV.

[¶ 3] In October 2004, Cheryl Kramer provided Kenneth Kramer with notice of her intent to seek a divorce and again served an action for divorce upon him. Kenneth Kramer asked the district court to not approve the property settlement agreement, claiming it was unconscionable and he signed it under undue influence when he was not represented by counsel. He also sought discovery from Cheryl Kramer. Cheryl Kramer asked the court to approve the settlement agreement and moved for a protective order. After an evidentiary hearing, the court decided Kenneth Kramer knew and understood the terms of the agreement before signing it and voluntarily consented to the agreement. The court decided the agreement was a fair and reasonable disposition of the parties' property and incorporated the

agreement into a divorce judgment. The court also granted Cheryl Kramer's motion for a protective order.

[¶ 4] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27-05-06. Kenneth Kramer's appeal is timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 28-27-01.

II

[¶ 5] Kenneth Kramer argues the district court failed to review the property settlement agreement for unconscionability. He claims neither the court's memorandum decision, nor its findings of fact indicate the court reviewed the agreement for unconscionability. He asserts the court's statement the agreement was a fair and reasonable disposition of the property was not sufficient to demonstrate the court reviewed the agreement for unconscionability. He claims the agreement should be analyzed for unconscionability, because (1) it provided for an unequal distribution of the parties' assets; (2) it was signed in contemplation of potential reconciliation without following the procedural safeguards set forth in *Peterson v. Peterson*, 313 N.W.2d 743 (N.D.1981); and (3) it failed to divide or account for assets accumulated by Cheryl Kramer after it was signed.

A

[¶ 6] When a divorce is granted, a district court "shall make an equitable distribution of the property and debts of the parties." N.D.C.C. § 14-05-24. In making an equitable distribution of the parties' property, however, this Court has encouraged district courts to recognize valid settlement agreements between divorcing parties. *Weber v. Weber*, 1999 ND 11,

¶ 9, 589 N.W.2d 358; *Clooten v. Clooten,* 520 N.W.2d 843, 846 (N.D.1994); *Peterson,* 313 N.W.2d at 745. Public policy favors the " 'prompt and peaceful resolution of [marital] disputes.' " *Clooten,* at 846 (quoting *Wolfe v. Wolfe,* 391 N.W.2d 617, 619 (N.D.1986)). "[T]o the extent that competent parties have voluntarily stipulated to a particular disposition of their marital property, a court ordinarily should not decree a distribution of property that is inconsistent with the parties' contract." *Wolfe,* at 619.

[¶ 7] District courts, however, should not blindly accept property settlement agreements. *Weber v. Weber,* 548 N.W.2d 781, 783 (N.D.1996). A district court's duty to make an equitable distribution of marital property under N.D.C.C. § 14–05–24 includes the authority to decide whether a settlement agreement was executed as a result of mistake, duress, menace, fraud, or undue influence under N.D.C.C. § 9–09–02(1). *Weber,* 548 N.W.2d at 783. A district court also may set aside a settlement agreement that is unconscionable. *Crawford v. Crawford,* 524 N.W.2d 833, 835–36 (N.D.1994). This Court has said "[u]nconscionability is a doctrine by which courts may deny enforcement of a contract 'because of procedural abuses arising out of the contract formation, or because of substantive abuses relating to the terms of the contract.' " *Weber,* 1999 ND 11, ¶ 11, 589 N.W.2d 358 (quoting *Black's Law Dictionary* 1524 (6th ed.1990)). In *Weber,* we said an unconscionable agreement is an "agreement no rational, undeluded person would make, and no honest and fair person would accept." *Weber,* 1999 ND 11, ¶ 15, 589 N.W.2d 358. *See also Crawford,* 524 N.W.2d at 836 (vacating judgment based on stipulation that was "blatantly one-sided" and "rankly unfair").

[¶ 8] Our decisions thus require district courts to review settlement agreements to determine whether the agreement was entered freely and knowingly, without fraud, duress, menace or undue influence, and whether the agreement was unconscionable. *Weber,* 548 N.W.2d at 783. Here, although the district court did not specifically state the agreement was "not unconscionable," the court's amended findings of fact state the agreement was "a fair and reasonable disposition of the property of the parties." Kenneth Kramer nevertheless claims the court's findings, which were prepared by Cheryl Kramer's counsel, altered the court's memorandum decision. The court, however, directed Cheryl Kramer's counsel to prepare the findings, and the findings and amended findings prepared by counsel became the court's findings when the court affixed its signature to those findings. *Schmidkunz v. Schmidkunz,* 529 N.W.2d 857, 858 (N.D. 1995). The court's findings are sufficient to understand the basis for its decision and are tantamount to a decision that the agreement was not unconscionable. We therefore conclude the district court reviewed the agreement for unconscionability.

B

[¶ 9] Kenneth Kramer nevertheless claims he did not read the agreement before he signed it, and he signed the agreement in contemplation of potential reconciliation without the benefit of counsel and without the procedural safeguards set forth in *Peterson.*

[¶ 10] In *Peterson,* 313 N.W.2d at 744–46, this Court reversed a judgment modifying a property settlement agreement and held the district court was not authorized to ignore or rewrite a validly written separation agreement absent statutory grounds for rescission. This Court recognized the

parties' intent was a major consideration for enforcing the agreement and emphasized both parties employed competent attorneys, negotiated with the express intention of finally adjusting their property rights, and agreed to be bound by the terms of the agreement in the event of divorce. *Id.* at 745.

[¶ 11] Here, there is some evidence Kenneth Kramer had contacted a Minneapolis attorney about the agreement and was pleased Cheryl Kramer's attorney could prepare the agreement for half of what the Minneapolis attorney had quoted. Cheryl Kramer testified Kenneth Kramer had told her that he had spoken with an attorney about the agreement, and the court found he had spoken with an attorney. Even if Kenneth Kramer did not consult with an attorney about the agreement, this Court has recognized that merely because parties are not represented by counsel when they sign a written agreement dividing their marital property is not, by itself, sufficient justification for relief from a judgment. *Fleck v. Fleck*, 337 N.W.2d 786, 790 (N.D.1983). Whether a party could have done better with an attorney is not the test for assessing the validity of a property settlement agreement. Rather, a court must consider whether the agreement was entered freely and knowingly, without fraud, duress, menace, or undue influence, and whether the agreement was unconscionable. *Weber*, 548 N.W.2d at 783.

[¶ 12] Cheryl Kramer testified there had been 50–60 conversations about the agreement during the two months before the parties signed it, and the court found there had been 50–60 conversations regarding negotiations about the agreement. Cheryl Kramer testified she and Kenneth Kramer met and discussed the agreement for more than two hours on the day it was signed. A stipulation in a divorce proceeding which occurs rapidly and without benefit of counsel may be viewed with skepticism. *Weber*, 1999 ND 11, ¶ 18, 589 N.W.2d 358; *Peterson v. Peterson*, 555 N.W.2d 359, 362 (N.D.1996). Here, however, there is evidence the parties engaged in multiple discussions regarding the agreement and Kenneth Kramer voluntarily executed it. Although Kenneth Kramer disputes the extent of the discussions, the district court found contrary to his claims and decided there was no evidence he entered the agreement by mistake, or that his signature was obtained by fraud, duress, menace, or undue influence. Moreover, to the extent Kenneth Kramer asserts he did not read the agreement before he signed it, his claim is not persuasive. *See David v. Merrill Lynch, Pierce, Fenner and Smith, Inc.*, 440 N.W.2d 269, 274 (N.D.1989) (stating person having capacity and opportunity to read contract without being misled as to its contents cannot avoid contract on ground of mistake if person signs contract without reading it).

[¶ 13] Relying on *Christmann v. Christmann*, 1997 ND 209, 570 N.W.2d 221, Kenneth Kramer also claims the district court erred in incorporating the property settlement agreement into the divorce judgment because the agreement was executed in contemplation of potential reconciliation, not divorce. In *Christmann*, at ¶ 3, a wife filed for dissolution of a marriage in 1985, but the parties eventually reconciled and executed a property agreement to settle their financial differences. The agreement left the parties' farmland in joint tenancy, placed some of their savings into separate accounts and certificates of deposit, and established a joint passbook savings account for family expenses. *Id.* The parties thereafter continued the marriage until 1994, when the wife again filed for divorce. *Id.* In that divorce proceeding, the husband claimed the district court

should have accepted the 1985 property agreement as a final division of the marital property. *Id.* at ¶ 5. This Court distinguished *Peterson* because in *Peterson* the parties entered into a separation agreement expressly providing they would be bound by the terms of the agreement in a future divorce and the property settlement agreement was intended to adjust all of the parties' property rights. *Christmann,* at ¶ 5. In *Christmann,* the parties' property agreement was in contemplation of reconciliation, not divorce, and the agreement did not state that it was a final adjustment of all the parties' property rights or the parties would be bound by the agreement in future divorce proceedings. *Id.* This Court also said that during the nearly ten years of marriage after the parties executed the property agreement, they commingled assets and largely ignored the agreement's provisions. *Id.* We concluded the district court did not err in ignoring the earlier property agreement for purposes of dividing the parties' marital property. *Id.*

[¶ 14] Here, although the parties' agreement mentioned reconciliation, the plain language of the agreement contemplated it would govern if the parties decided to pursue a divorce. The agreement plainly included a separate provision about "SUBSEQUENT DIVORCE," which stated "[n]othing herein contained shall be deemed to prevent either of the parties from maintaining a suit for absolute dissolution of marriage against the other." That provision further stated that at the time the agreement was entered "both the husband and wife contemplate that a divorce may subsequently be granted." The agreement also stated it was executed "to ascertain whether or not their differences might be reconciled or if they will eventually seek to dissolve their marriage." The agreement clearly stated it would resolve the parties' property distribution "in the event [Cheryl Kramer] shall seek a divorce." We conclude the parties' agreement expressly contemplated divorce, and *Christmann* is not controlling.

## C

[¶ 15] We further conclude the agreement is not unconscionable because of any claimed disparity in the award of marital property. The property settlement agreement said the parties were married on October 6, 1973. The agreement gave Cheryl Kramer her personal property, a 1981 Chevy Malibu, a mattress, all the money in her checking and savings accounts, and a $15,000–$20,000 motor vehicle that Kenneth Kramer agreed to immediately purchase for her. The agreement awarded Kenneth Kramer his personal property, all the money in his checking and savings accounts, a 2001 Harley Davidson motorcycle, a 1991 S–10 pickup, and a 1998 pickup. The agreement recognized the parties would continue to jointly own a house in Oakes and awarded Kenneth Kramer exclusive use of the house with responsibility for paying a $36,000 mortgage plus taxes and insurance for the house. The agreement said in the event of a divorce, the parties agreed the value of the house was $80,000 and the equity in the house would be divided equally between them. The agreement required Kenneth Kramer to maintain his current life insurance policy with Cheryl Kramer named as the beneficiary, to continue to provide health insurance for her, and to pay all her non-covered medical costs. The agreement required Kenneth Kramer to continue to contribute to his pension plan and, in the event of divorce, his pension would be evenly divided between the parties. The agreement also required Kenneth Kramer to pay Cheryl Kramer $500 per month in spousal support until she remarries or dies. From our review of the record and the parties' finan-

cial circumstances, we conclude the agreement cannot be characterized as one that "no rational, undeluded person would make, and no honest and fair person would accept," *Weber*, 1999 ND 11, ¶ 15, 589 N.W.2d 358, or one that was "blatantly one-sided" and "rankly unfair." *Crawford*, 524 N.W.2d at 836.

### D

[¶ 16] Kenneth argues the district court erred in enforcing the agreement because the parties failed to follow the agreement and the admitted facts demonstrate a change in their circumstances.

[¶ 17] We reject Kenneth Kramer's claim the parties failed to follow the agreement. The parties lived separately after the agreement was signed and did not commingle their assets. To the extent Kenneth Kramer argues the parties disregarded the agreement because he failed to pay Cheryl Kramer's medical expenses and he used a vehicle awarded to her without buying her a new vehicle as required by the agreement, his claims are not persuasive. Although the parties may not have completely complied with every term of the agreement, we agree with the district court's assessment that the parties followed most of the provisions of the agreement.

[¶ 18] We also reject Kenneth Kramer's claim the parties' circumstances have changed since the separation agreement. Property settlement agreements that do not require an immediate divorce implicitly contemplate there may be some minor changes in the parties' circumstances before the divorce. We agree with the district court's conclusion that the parties' assets and financial circumstances had not changed in a material way since the parties executed the agreement. We conclude the court did not err in deciding the parties freely and voluntarily entered into a settlement agreement that was fair and reasonable and the court did not err in enforcing the agreement and incorporating it into the divorce judgment.

### III

[¶ 19] Kenneth Kramer argues the district court abused its discretion in issuing a protective order that limited the evidence available to him to attack the settlement agreement. He claims he was entitled to discovery to apprise the court of all evidence of unconscionability and to permit him to effectively cross-examine Cheryl Kramer. He asserts he was entitled to learn about Cheryl Kramer's present financial situation to demonstrate that enforcement of the agreement was unconscionable.

[¶ 20] A district court's ruling on discovery motions is reviewed under the abuse of discretion standard. *Guskjolen v. Guskjolen*, 391 N.W.2d 639, 641 (N.D. 1986). A court abuses its discretion when it acts in an arbitrary, unreasonable, or conscionable manner, its decision is not the product of a rational mental process leading to a reasoned decision, or it misinterprets or misapplies the law. *North Dakota Human Rights Coalition v. Bertsch*, 2005 ND 98, ¶ 11, 697 N.W.2d 1.

[¶ 21] Under the circumstances of this case, we conclude discovery of Cheryl Kramer's current financial circumstances was not relevant to whether the agreement was freely and voluntarily entered and was unconscionable. We conclude the court's post-hearing issuance of a protective order was not arbitrary, capricious, or unreasonable and therefore was not an abuse of discretion.

[¶ 22] We conclude, however, the parties' agreement and the judgment does not preclude Kenneth Kramer from seek-

ing a modification of spousal support upon a change of circumstances in the future. *Wheeler v. Wheeler*, 419 N.W.2d 923, 925 (N.D.1988).

## IV

[¶ 23]   The judgment is affirmed.

[¶ 24] GERALD W. VANDE WALLE, C.J., CAROL RONNING KAPSNER, MARY MUEHLEN MARING, and DANIEL J. CROTHERS, JJ., concur.