403 S.E.2d 712

**Ira GANGOPADHYAY**

v.

**Nirmal K. GANGOPADHYAY.**

No. 19608.

Supreme Court of Appeals of
West Virginia.

Feb. 13, 1991.
Rehearing Denied April 24, 1991.

H.L. Kirkpatrick, III, Ashworth & Kirkpatrick, Beckley, for Ira Gangopadhyay.

James B. McIntyre, McIntyre, Haviland & Jordan, Charleston, for Nirmal K. Gangopadhyay.

MILLER, Chief Justice:

## I.

This appeal presents the principal question of whether the parties to a divorce can be bound by an oral property settlement if such an agreement is spread upon the record in open court and the parties testify under oath they agree to its terms.

The plaintiff wife in the divorce action below argues that such a procedure violates W.Va.Code, 48–2–16(a) (1984), which concerns the effect of a separation agreement on temporary and permanent division of property and awards of alimony and child support,[1] and W.Va.Code, 48–2–32(b), which involves the effect of a separation agreement on the equitable distribution of property.[2] Both sections apply "where the parties ... have executed a separation agreement." In addition, the plaintiff points out that the term "separation agreement" has been legislatively defined in W.Va.Code, 48–2–1(h) (1990), as "a written agreement entered into by a husband and wife[.]"[3] From this language, the plaintiff maintains that in order to be valid, a separation agreement must be in writing and signed by both parties.[4]

As a subsidiary position, the plaintiff argues that the trial court is also required to find "that the agreement is fair and reasonable, and not obtained by fraud, duress or other unconscionable conduct by one of the parties[.]" W.Va.Code, 48–2–16(a). See W.Va.Code, 48–2–32(b).[5] In this case, the plaintiff asserts that no such finding was made by either the family law master or by the circuit court.

## II.

Having framed the legal issues, we turn to the facts, which are not substantially

---

1. W.Va.Code, 48–2–16(a), provides, in relevant part:

   "In cases where the parties to an action commenced under the provisions of this article have executed a separation agreement, if the court finds that the agreement is fair and reasonable, and not obtained by fraud, duress or other unconscionable conduct by one of the parties, and further finds that the parties, through the separation agreement, have expressed themselves in terms which, if incorporated into a judicial order, would be enforceable by a court in future proceedings, then the court shall conform the relief which it is authorized to order under the provisions of sections thirteen and fifteen [§§ 48–2–13 and 48–2–15] of this article to the separation agreement of the parties."

2. W.Va.Code, 48–2–32(b), provides:

   "In cases where the parties to an action commenced under the provisions of this article have executed a separation agreement, then the court shall divide the marital property in accordance with the terms of the agreement, unless the court finds:

   "(1) That the agreement was obtained by fraud, duress, or other unconscionable conduct by one of the parties, or

   "(2) That the parties, in the separation agreement, have not expressed themselves in terms which, if incorporated into a judicial order, would be enforceable by a court in future proceedings, or

   "(3) That the agreement, viewed in the context of the actual contributions of the respective parties to the net value of the marital property of the parties, is so inequitable as to defeat the purposes of this section, and such agreement was inequitable at the time the same was executed."

3. W.Va.Code, 48–2–1(h), states:

   "'Separation agreement' means a written agreement entered into by a husband and wife whereby they agree to live separate and apart from each other and, in connection therewith, agree to settle their property rights; or to provide for the custody and support of their minor child or children, if any; or to provide for the payment or waiver of alimony by either party to the other; or to otherwise settle and compromise issues arising out of their marital rights and obligations. Insofar as an antenuptial agreement as defined in subsection (b) of this section affects the property rights of the parties or the disposition of property upon an annulment of the marriage, or a divorce or separation of the parties, such antenuptial agreement shall be regarded as a separation agreement under the provisions of this article."

   The provisions of this section in effect at the time of the parties' separation agreement, W.Va. Code, 48–2–1(h) (1984), are identical to those stated above.

4. Although not mentioned by the parties, W.Va. Code, 48–3–9, provides: "A contract between a husband and wife shall not be enforceable at law, unless such contract, or some memorandum or note thereof, be in writing and signed by the party to be charged thereby."

5. W.Va.Code, 48–2–32(b), uses the word "inequitable" instead of the phrase "fair and reasonable." For the complete text of W.Va.Code, 48–2–32(b), see note 2, *supra*.

disputed. The parties were born and reared in India. They were married in Covington, Virginia, in December of 1971. Two children were born of the marriage. The parties last cohabited on September 30, 1986, in Raleigh County. The plaintiff is employed as a social worker by the West Virginia Department of Health, and the defendant is employed as an engineer by a coal company.

On July 28, 1987, the plaintiff instituted proceedings for divorce in the Circuit Court of Raleigh County on grounds of irreconcilable differences and cruel and inhuman treatment. The defendant filed an answer and counterclaim seeking a divorce on the same grounds. Both parties sought equitable distribution of the marital estate and custody of the children. The case was referred by the circuit court to a family law master (master).

A final hearing was conducted before the master on July 12, 1988. The record reflects that the parties had met immediately prior to the hearing and had advised the master that a settlement had been reached. Shortly thereafter, counsel recited on the record the parties' oral agreement as to the distribution of the marital assets, custody of the minor children, child support, and waiver of alimony. Pursuant to questioning by both her own attorney and by the defendant's counsel, the plaintiff indicated that she fully understood both the terms of the agreement and the fact that she would be bound by it from the time it was entered upon the record. The plaintiff further stated that she had entered into the agreement, and thereby waived her right to alimony, voluntarily, freely, and willingly. The defendant offered similar testimony. Counsel for both parties represented their

understanding that the agreement would be reduced to writing and signed by the parties shortly after the hearing.

At the conclusion of the hearing the master indicated that he would accept the agreement and that the parties would thereafter be bound by it. By letter dated July 22, 1988, however, plaintiff's counsel advised the master that the plaintiff had withdrawn his authority to execute an order incorporating the settlement agreement.

In September of 1988, the plaintiff tendered to the master a motion for a final hearing, seeking to have the property settlement set aside on several grounds. The plaintiff claimed that the agreement was not enforceable because it was not in writing and signed by the parties. She also asserted that her consent was not knowingly and intelligently given, that she had been pressured into making the settlement agreement, and that the defendant had misled her as to the value of the marital residence.[6]

A hearing was conducted before the master on November 28, 1988. The master concluded that because the parties spread their agreement on the record at the July 12, 1988 hearing and approved it under oath, the oral agreement was the equivalent of a writing. The master also found that the parties' bargain was struck at arms' length. The master's recommended decision, issued in December, 1988, advised the circuit court to grant the divorce in accordance with the terms of such agreement.

The plaintiff excepted to the master's findings and recommendations. After a final hearing on September 15, 1989, the circuit court granted the parties a divorce

**6.** The plaintiff also asserted that the provisions in the settlement for joint custody of the parties' children was accepted by the master without consideration of the principles enunciated in *Lowe v. Lowe*, 179 W.Va. 536, 370 S.E.2d 731 (1988), which was announced on July 1, 1988, just eleven days before the final hearing before the master. *Lowe* placed a number of restrictions on awards of joint custody, including requirements that the trial court conduct a factual inquiry to ensure that joint custody is in the best interests of the child and that the parents "sub-

mit to the Court a joint parenting agreement specifying each parent's powers, rights, and responsibilities and proposing procedures for making changes to the agreement or for mediating or otherwise resolving disputes and alleged breaches." Syllabus Point 5, in part. The circuit court in this case subsequently set aside the joint custody portion of the settlement agreement and granted custody to the plaintiff. No appeal is taken from that ruling, and, accordingly, the custody issue is not before this Court.

on grounds of irreconcilable differences. In its final order, the circuit court concluded that the parties' property settlement agreement was fair and equitable and a proper distribution of the marital property. The court further found that both parties had understood that the agreement was binding on them at the time of the July 12, 1988 hearing and that it would later be reduced to writing. The circuit court incorporated a written version of the agreement into its final decree and ordered distribution of the marital estate in accordance therewith. The plaintiff's motion for a new trial was denied by order of the circuit court dated November 14, 1989. This appeal ensued.

### III.

We have not had occasion to decide whether an oral separation agreement which is dictated into the record in open court with the parties present and acknowledging the correctness and accuracy of the agreement on the record is valid and enforceable. A literal reading of W.Va.Code, 48–2–1(h) shows that a "written agreement" is called for.[7] It may be argued that once it is transcribed on the record, an oral settlement is the equivalent of a written agreement. However, both W.Va.Code, 48–2–16(a) and 48–2–32(b) give effect to property settlements "where the parties ... have executed a separation agreement,"[8] indicating that the agreement must be signed by both parties.

Clearly, a prudent attorney would make certain that a separation agreement was in writing and signed by the parties to indicate their approval of its terms. Such a precaution would avoid any claim that the agreement was not valid from a technical standpoint. A written agreement would also substantially diminish any claim that the agreement was unenforcably vague or

could not be understood.[9] Finally, requiring the parties to sign a written agreement would militate against a later claim that the agreement was coerced or inequitable.

■ Thus, there are cogent policy reasons which cause us to encourage the use of written separation agreements, signed by the parties, as an expeditious means of disposing of marital property, alimony, and support issues. We do not believe, however, that the legislative preference for written separation agreements necessarily precludes enforcement of an oral agreement in every case. Other jurisdictions with statutes similar to ours have allowed the parties to place on the court record the substance of their oral agreement, concluding that this procedure satisfies the statutory requirement of a written separation agreement where the parties are represented by able counsel and acknowledge their consent to the agreement on the record. *Perras v. Perras*, 151 Ariz. 201, 726 P.2d 617 (App.1986); *In re Marriage of Chambers*, 657 P.2d 458 (Colo.App.1982); *In re Marriage of Johnson*, 350 N.W.2d 199 (Iowa 1984); *Waitt v. Waitt*, 172 Ind.App. 357, 360 N.E.2d 268 (1977); *Calloway v. Calloway*, 707 S.W.2d 789 (Ky.App.1986); *Peirick v. Peirick*, 641 S.W.2d 195 (Mo. App.1982); *McIntosh v. McIntosh*, 74 N.C. App. 554, 328 S.E.2d 600 (1985).

Obviously, such a procedure is fraught with the potential for misunderstanding and abuse. If the agreement is the product of eleventh hour negotiations or is agreed to on the eve of hearing, it may not bear the deliberateness and informed consent of a prior written agreement. The first time the court will hear the agreement is when it is dictated into the record. If the agreement is of any length, both the court and the parties may have difficulty remembering and understanding its terms.[10] Finally, the potential for fraud,

---

**7.** For the complete text of W.Va.Code, 48–2–1(h), see note 3, *supra.*

**8.** W.Va.Code, 48–2–16(a) and 48–2–32(b), are set out in notes 1 and 2, *supra,* respectively.

**9.** Under both W.Va.Code, 48–2–32(b), and 48–2–16(a), the separation agreement must be such

that the parties have "expressed themselves in terms which, if incorporated into a judicial order, would be enforceable by a court in future proceedings[.]"

**10.** Under W.Va.Code, 48A–4–2(e) (1990), hearings before the family law master "shall be recorded electronically." Thus, it would be dif-

duress, or coercion is much greater where the agreement is not reduced to writing before being presented to the court.

■ For these reasons, we believe certain safeguards should attend the acceptance of an oral separation agreement. As the North Carolina Court of Appeals stated in *McIntosh v. McIntosh*, 74 N.C.App. at 556, 328 S.E.2d at 602:

> "[I]t must affirmatively appear in the record that the trial court made contemporaneous inquiries of the parties at the time the [agreement was presented]. It should appear that the court read the terms of the [agreement] to the parties; that the parties understood the legal effects of their agreement and the terms of the agreement, and agreed to abide by those terms of their own free will."

*See Waitt v. Waitt, supra.*

In discussing the North Carolina statute requiring separation agreements to be in writing, the court in *McIntosh* also stated:

> "We believe this section was enacted to insure against fraud and overreaching on the part of one of the spouses. It has often been stated that, '[t]he relationship between husband and wife is the most confidential of all relationships, and transactions between them, to be valid, must be fair and reasonable[.]' " 74 N.C. App. at 555–56, 328 S.E.2d at 602, *quoting Johnson v. Johnson*, 67 N.C.App. 250, 255, 313 S.E.2d 162, 165 (1984).

Both W.Va.Code, 48–2–16(a) and 48–2–32(b) require that a separation agreement be fair and reasonable and not obtained through fraud, duress, or other unconscionable conduct. We have also recognized that a fiduciary relationship exists between husband and wife when they deal with each other. *See Marshall v. Marshall*, 166 W.Va. 304, 273 S.E.2d 360 (1980).

In *Clay v. Clay*, 182 W.Va. 414, 388 S.E.2d 288 (1989), we considered whether the trial court could look behind a written separation agreement to determine its fairness where both parties were represented by counsel and testified they were satisfied with the settlement. We concluded that W.Va.Code, 48–2–16(a) and 48–2–32(b) were not "intended to force upon a trial court an affirmative duty to question the wisdom of a spouse's apparent satisfaction with the terms of a property settlement agreement[.]" 182 W.Va. at 418, 388 S.E.2d at 292.

It is important to note, however, that *Clay* involved a negotiated, written agreement signed by the parties in advance of the hearing.[11] There was no claim of fraud or duress and no assertion that the agreement was inequitable or unreasonable at the time it was presented to the court for approval. Certainly, a greater inquiry is demanded where the agreement is oral instead of written and where there are allegations of fraud, duress, or coercion.[12]

In sum, then, even though there is an express legislative preference in divorce cases for a separation agreement to be in writing and signed by the parties, we do not prohibit *per se* the practice of orally placing on the record the terms of a separation agreement if certain conditions are met. However, we believe this practice should be used sparingly because it places an additional burden on the court before which the record is made. Where an oral separation agreement is dictated on the record, additional inquiries must be made by the court or the master to ascertain that the parties understand its terms and have voluntarily agreed to them without any coercion. Furthermore, the court or the master must find that the terms are fair and equitable. This latter inquiry requires a disclosure of the financial background of the parties sufficient to justify the conclusion of the court or master.

ficult to provide a prompt typed transcript upon which the parties could be examined.

11. In *Clay*, the property settlement agreement was executed on July 10, 1986, and was presented to the court at a hearing on July 25, 1986.

12. Some courts have concluded that orally dictated settlement agreements are like court stipulations and are, therefore, accepted without any inquiry as to their reasonableness. *See, e.g., Peirick v. Peirick, supra; Davidson v. Davidson*, 194 N.J.Super. 547, 477 A.2d 423 (1984). We decline to adopt this view because our statutes on separation agreements mandate otherwise.

In the present case, we do not find from the record that the master before whom the separation agreement was dictated made a sufficient independent inquiry to determine whether the parties understood the agreement or whether it was voluntary and free from coercion. The plaintiff alleges that her husband intimidated her into agreeing to the settlement just prior to the hearing. She also asserts that due to cultural differences in her upbringing she was unfamiliar with the legal process and unable to express her dissatisfaction with the agreement or to communicate with her attorney. Unfortunately, the master made no factual inquiry into these allegations and took no testimony.[13] In these circumstances, we cannot say that the inquiry conducted by counsel for the parties, soliciting merely conclusory responses, was sufficient to satisfy the requirements set out above.

The circuit court did make a finding that the settlement was fair and equitable. There does not appear, however, to have been an inquiry into the parties' financial background. Indeed, there appears to have been no inquiry into this area by either the master or the circuit court. Clearly, this oversight requires correction.

For these reasons, the judgment of the Circuit Court of Raleigh County is reversed, and the case is remanded for a further hearing with regard to the validity of the separation agreement.

Reversed and Remanded.

---

**13.** It does appear that the relationship between the plaintiff and her attorney deteriorated to the point that he moved to withdraw from the case in April, 1989. The motion was granted on June 2, 1989. It also appears, however, that the plaintiff is an educated woman, that she objected to her attorney's motion to withdraw, and informed the judge in detail of her complaints about his representation. These facts would militate against a finding that the plaintiff did not fully comprehend the terms of the agreement or the consequences of the settlement.