438 S.E.2d 579

**Grady D. HAGER, Plaintiff Below, Appellee,**

v.

**Pauline K. HAGER, Defendant Below, Appellant.**

**No. 20728.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 15, 1993.

Decided Dec. 10, 1993.

Peter A. Hendricks, Madison, for appellee.

Michael V. Marlow, Charleston, for appellant.

PER CURIAM:

This is an appeal by Pauline Kay Hager from an August 5, 1991, final order of the Circuit Court of Boone County finding that the terms of an oral property settlement agreement between the Appellant and her former husband, Appellee Grady D. Hager, were fair and equitable and that the Appellant fully understood and consented to the terms of the agreement. The Appellant contends that the terms of the agreement were not fair and equitable and should therefore not be enforced against her. We agree with the contentions of the Appellant and reverse and remand the decision of the lower court.

I.

Pauline and Grady Hager were married on January 1, 1964, and Mr. Grady (hereinafter referred to as the Appellee or Mr. Grady) initiated a divorce complaint on August 25, 1989. A temporary hearing was held before Family Law Master Susan Shelton Perry on October 5, 1989, and the Appellant was awarded $800.00 per month as temporary support. The parties attended a divorce hearing on February 7, 1990, before Family

Law Master Perry. During this hearing, an oral property settlement agreement was dictated on the record. Prior to its presentation on the record, the Appellant was asked whether she felt that the terms of the agreement were fair and equitable. At that time, she answered in the affirmative. Upon questioning her counsel immediately after the hearing and upon learning the actual terms of the agreement, however, she informed her counsel that the terms were not acceptable.[1]

Pursuant to the oral property settlement agreement, the Appellant was to receive the following: $475.00 per month for one year, a 1987 Chrysler New Yorker with outstanding indebtedness of $387.00 per month to be paid by the Appellant, and the marital home.[2] The parties' furniture and personal property were to be divided equally, and the Appellee was to receive a 1982 Ford pickup truck, a 1978 Ford pickup truck, a Gravely tractor, a fishing boat, various tools, and his CSX Railroad pension and retirement plan.

## II.

■ The Appellant contends that the lower court abused its discretion in finding that the terms and conditions of the oral settlement agreement were fair and equitable and in failing to engage in sufficient background inquiry to justify that conclusion. The Appellant's argument is actually two-fold; first, the Appellant contends that she did not truly enter into the oral settlement agreement, and second, she maintains that the terms of the agreement itself were so inequitable as to defeat the proposed settlement. In syllabus point 2 of *Gangopadhyay v. Gangopadhyay,* 184 W.Va. 695, 403 S.E.2d 712 (1991),[3] we explained the following:

Where an oral separation agreement is dictated on the record, additional inquiries

must be made by the court or the family law master to ascertain that the parties understand its terms and have voluntarily agreed to them without any coercion. Furthermore, the court or the family law master must find that the terms of the agreement are fair and equitable. This latter inquiry requires a disclosure of the financial background of the parties sufficient to justify the conclusion of the court or the family law master.

■ The Appellee contends that the lower court considered and specifically addressed the issues raised in *Gangopadhyay* by initially remanding this case to the Family Law Master for reconsideration. Indeed, prior to the lower court's August 5, 1991, final order approving of the settlement agreement, this matter was remanded to the family law master for additional inquiries. The primary thrust of those additional proceedings, however, appeared to be the ascertainment of whether the Appellant had voluntarily entered into the agreement. While we adopt the findings of the lower court with regard to the Appellant's voluntary consent to the agreement, we do not accept the lower court's conclusion that sufficient inquiry was made into the fairness of the agreement.

The evidence introduced before the family law master indicated that the parties were married for twenty-five years prior to the initiation of the divorce. Two children, both of whom are now emancipated, were born of the marriage. The Appellee was employed by CSX Railroad as a yard master, with net income of approximately $1800.00 per month.[4] The Appellee also apparently earns extra income as an automobile mechanic. He was forty-six years of age at the time of the divorce, and the Appellant was forty-five years of age. The Appellant had never been

---

1. Although it is unclear from the record before this Court, it does not appear that the Appellant's counsel informed the family law master or the court of the Appellant's contention that the agreement was inequitable until exceptions to the family law master's decision were filed with the circuit court in May 1990.

2. The Appellant alleges that the marital home suffered extensive foundation damage as a result of mine blasting prior to the divorce. The record

on appeal is devoid of any evidence on the value of the home.

3. The *Gangopadhyay* decision was rendered subsequent to the initial reading of the agreement onto the record but prior to the final decision of the lower court.

4. The Appellant contends that the Appellee presently earns approximately $50,000.00 per year in his employment with CSX Railroad.

employed outside the home, had no high school education, and possessed no formal job skills. During the marriage, the Appellant provided homemaking services for the family and raised two children. She presently suffers from physical deformities of the left side of her body, including a club left foot and a left leg that is shorter than the right leg. The Appellant will have no medical insurance upon the granting of the divorce.

The oral agreement approved by the lower court as fair and equitable provides alimony for one year only, in the amount of $475.00 per month. The agreement further makes the Appellant responsible for a $375.00 per month car payment, leaving the Appellant with only $88.00 to support herself. Even this sparse amount would last only one year under the lower court's order.

In enunciating standards for the evaluation of oral property settlements of this nature in *Gangopadhyay* and in our subsequent decision of *Summers v. Summers*, 186 W.Va. 635, 413 S.E.2d 692 (1991), we emphasized the need for court evaluation and approval of oral agreements entered into between parties to a divorce.[5] This evaluation is not to be a perfunctory overview or rubber-stamp approval of the decisions of the parties. It must consist of a reasoned and thorough inquiry into the background financial status of the parties. To thereafter determine that the parties have resolved the issues in a fair and equitable manner, the court or family law master must examine the proposed resolution in light of evidence adduced regarding the financial status of the parties. That for-

mula was concisely enunciated in *Gangopadhyay*. *See* 184 W.Va. at 699, 403 S.E.2d at 716.[6]

The circuit court determined that the Appellant voluntarily entered into the agreement, but erred, however, in its determination that the agreement was fair and equitable. The Appellee attempts to explain the agreement by asserting that the Appellant desired the marital abode and was willing to forego any permanent alimony and any portion of the Appellee's pension to assure that she would remain in that home. Perhaps the Appellant did want the marital abode, and perhaps she was willing to enter into any type of agreement to obtain it. Because such an agreement was inequitable on its face under all the circumstances, however, certainly additional inquiry into whether the Appellant understood her rights and the implications of the agreement was warranted. Furthermore, since the parties did not reduce this agreement to writing, they subjected themselves to the more stringent requirements of *Gangopadhyay*.[7]

The Appellee also implies, in his attempt to justify the agreement, that the Appellant's present circumstance could be altered if she remarries soon. While that is true, it is irrelevant to the considerations properly before this Court. The determination of the fair and equitable nature of the agreement in question is to be based upon facts as they presently exist, not speculation as to potential future events.

---

5. In *Summers*, we noted that the review requirement is "an obvious recognition of the important interests that are at stake in a typical settlement agreement and the concomitant need to ensure that one party does not take advantage of the other when these interests are being compromised." 186 W.Va. at 640, 413 S.E.2d at 697.

6. Our imposition of this responsibility onto judicial officers should in no way minimize the responsibility of a litigant's own lawyer. It is difficult to understand why a lawyer would advise a client to enter into an obviously unfair agreement, and an individual whose lawyer is negligent may have a cause of action for malpractice. In the case of pro se litigants, however, courts may have an even heightened responsibility to see to it that domestic relations agreements are equitable.

7. As we recognized in *Gangopadhyay*, certain additional "safeguards should attend the acceptance of an oral separation agreement." 184 W.Va. at 699, 403 S.E.2d at 716. A written settlement agreement is certainly to be scrutinized to ascertain whether it is fair and reasonable and not obtained through fraud, duress, or other unconscionable conduct, pursuant to West Virginia Code §§ 48–2–16(a) and 48–2–32(b). However, the principles set forth in *Gangopadhyay* are designed to establish greater safeguards for *oral* agreements since "[c]ertainly, a greater inquiry is demanded where the agreement is oral instead of written and where there are allegations of fraud, duress, or coercion." *Id.*

Based upon the foregoing, we reverse the decision of the lower court and remand this matter for resolution consistent with this opinion.

Reversed and remanded.