491 S.E.2d 30

**Edward A. SQUIRTS, Plaintiff Below, Appellee,**

v.

**Wendy S. SQUIRTS, Defendant Below, Appellant.**

**No. 23814.**

Supreme Court of Appeals of West Virginia.

Submitted April 29, 1997.

Decided July 8, 1997.

contends that the lower court erred by accepting a settlement agreement to which the Appellant did not assent. We conclude that the lower court abused its discretion in failing to set aside the initial order based upon an alleged agreement between the parties, and we reverse and remand this matter for additional consideration.

## I.

The Appellant and the Appellee were married in 1980 and were separated during the latter part of 1994. The Appellant contends that the last date of cohabitation was September 21, 1994, but the Appellee asserts that the parties last cohabited on July 31, 1994. On October 27, 1994, the Appellee filed for divorce, alleging irreconcilable differences. The Appellant filed an answer and counterclaim denying irreconcilable differences and claiming that the Appellee had been guilty of cruel and inhuman treatment. Subsequent to an August 22, 1995, hearing before the family law master, a temporary order awarding the Appellant alimony of $364 monthly was entered.[1] Although the parties had not reached any agreement, counsel for the parties did apparently engage in some negotiations subsequent to the family law master hearing.

On November 2, 1995, the family law master's assistant sent a letter to counsel for both parties indicting that the family law master requested each party to prepare a recommended order. Counsel for the Appellee thereafter tendered a proposed order to the family law master which apparently indicated that an agreement had been reached regarding distribution of marital property. This alleged agreement had not been executed by either the Appellant or her counsel. Further, the agreement was neither in writing nor placed orally upon the record.

On December 12, 1995, the family law master sent the parties a proposed final order, granting a divorce based on one year separation, and informed them that they had until December 24, 1995, to file a petition for

Charles A. Riffee, II, Caldwell, Cannon–Ryan & Riffee, Charleston, for Appellee.

Andrew S. Nason, Pepper & Nason, Charleston, for Appellant.

**PER CURIAM:**

This is an appeal by Wendy Squirts (hereinafter "Appellant") from a March 27, 1996, order of the Circuit Court of Kanawha County denying the Appellant's motion for reconsideration of a divorce between the Appellant and Edward A. Squirts (hereinafter "Appellee"). The Appellant contends that the lower court erred in denying the Appellant's Rule 60(b) motion to set aside a previous order, entered on January 4, 1996. The Appellant

---

1. The Appellant was employed as a clerical worker for the United Parcel Service, and the Appellee was employed by Yellow Freight, Inc., as a dispatcher. The Appellant earned approximately $11,476 net per year, and the Appellee earned approximately $43,000 per year gross.

review. The Appellant asserts that her counsel filed exceptions to the recommended decision and mailed those exceptions to the family law master on December 21, 1995.

On January 4, 1996, the lower court entered a final order based upon the recommendation of the family law master. This order, referencing an agreement between the parties, awarded the Appellee all property from the marriage except personal effects and an automobile valued at approximately $6600. The Appellee further was awarded a home valued at $74,000 and personal property of $14,000. He was also required to pay debts of $81,000. The order also entitled him to monthly retirement benefits of $453.73 and a profit sharing plan valued at $13,504. The Appellant was awarded alimony of $530 monthly and the automobile valued at approximately $6600. There was no attempt to divide the Appellee's retirement benefits.

The Appellant thereafter filed a motion for reconsideration under Rule 60(b) of the West Virginia Rules of Civil Procedure,[2] alleging a mistake based upon reference to a nonexistent agreement. On March 27, 1996, the lower court affirmed the entry of the order and granted fees in excess of $1,000 to the Appellee's attorney. The Appellant appeals that determination to this Court, contending that the lower court erred in (1) ratifying a settlement agreement that was not in writing or presented orally upon the record; and (2) granting a divorce based upon a one-year separation without corroborating testimony of a party and without a pleading asserting one-year separation.

## II.  SETTLEMENT AGREEMENT

In *Gangopadhyay v. Gangopadhyay*, 184 W.Va. 695, 403 S.E.2d 712 (1991), we addressed a court's obligation to evaluate the fairness of an oral property settlement agreement. We emphasized that the court's inquiry into the fairness issue "requires a disclosure of the financial background of the

parties sufficient to justify the conclusion of the court or master." *Id.* at 699, 403 S.E.2d at 716. In syllabus point one of *Gangopadhyay*, we stated as follows:

Even though there is an express legislative preference in divorce cases for a separation agreement to be in writing and signed by the parties, we do not prohibit per se the practice of orally placing on the record the terms of a separation agreement if certain conditions are met.

In syllabus point two of *Gangopadhyay*, we observed:

Where an oral separation agreement is dictated on the record, additional inquiries must be made by the court or the family law master to ascertain that the parties understand its terms and have voluntarily agreed to them without any coercion. Furthermore, the court or the family law master must find that the terms of the agreement are fair and equitable. This latter inquiry requires a disclosure of the financial background of the parties sufficient to justify the conclusion of the court or the family law master.

Our *Gangopadhyay* decision emphasized that certain additional "safeguards should attend the acceptance of an oral separation agreement." 184 W.Va. at 699, 403 S.E.2d at 716. While a written settlement agreement must be carefully scrutinized pursuant to West Virginia Code §§ 48–2–16(a) and 48–2–32(b), in an effort to determine its fairness, *Gangopadhyay* established elevated safeguards for oral agreements since "[c]ertainly, a greater inquiry is demanded where the agreement is oral instead of written and where there are allegations of fraud, duress, or coercion." *Id.* As we stated in *Gangopadhyay*, "a prudent attorney would make certain that a separation agreement was in writing and signed by the parties to indicate their approval of its terms." 184 W.Va. at 698, 403 S.E.2d at 715.

**2.**  Rule 60(b) of the West Virginia Rules of Civil Procedure provides, in pertinent part, that a court may relieve a party from a final order on the basis of:

(1) Mistake, inadvertence, surprise, excusable neglect, or unavoidable cause; (2) newly dis-

covered evidence ... (3) fraud ... misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied ... (6) any other reason justifying relief from the operation of the judgment.

West Virginia Code § 48–2–16(a) (1984)[3] provides that a lower court shall conform its order to the separation agreement of the parties "if the court finds that the agreement is fair and reasonable, and not obtained by fraud, duress or other unconscionable conduct by one of the parties ..." and further concludes that the parties have expressed their intentions in terms which would be enforceable by a court in future proceedings. *Id.*

In *Buckler v. Buckler*, 195 W.Va. 705, 466 S.E.2d 556 (1995), we analyzed the requirements of the § 48–2–16(a) and explained as follows:

West Virginia Code § 48–2–16(a) essentially creates a formula under which court approval of a separation agreement is a condition precedent to the incorporation of that agreement into a final divorce decree. A necessary corollary to the requirement of a finding of fairness or reasonableness is an investigation sufficient to justify such a finding. Especially when interpreted in conjunction with the financial disclosure provisions of West Virginia Code § 48–2–33, West Virginia Code § 48–2–16(a) compels a lower court to investigate the financial resources or circumstances of the parties and to accumulate clear and definitive evidence regarding such financial concerns and the value of properties being apportioned.

*Id.* at 713, 466 S.E.2d at 564. West Virginia Code § 48–2–32(b) (1995) provides as follows:

In cases where the parties to an action commenced under the provisions of this article have executed a separation agreement, then the court shall divide the marital property in accordance with the terms of the agreement, unless the court finds:

(1) That the agreement was obtained by fraud, duress, or other unconscionable conduct by one of the parties, or

(2) That the parties, in the separation agreement, have not expressed themselves in terms which, if incorporated into a judicial order, would be enforceable by a court in future proceedings, or

(3) That the agreement, viewed in the context of the actual contributions of the respective parties to the net value of the marital property of the parties, is so inequitable as to defeat the purposes of this section, and such agreement was inequitable at the time the same was executed.

In enunciating standards for the evaluation of oral property settlements in *Gangopadhyay* and in *Summers v. Summers*, 186 W.Va. 635, 413 S.E.2d 692 (1991), we emphasized the requirement of court evaluation and approval of oral agreements between parties to a divorce. In *Gangopadhyay*, we recognized that oral placement of settlement terms on record "is fraught with the potential for misunderstanding and abuse." 184 W.Va. at 698, 403 S.E.2d at 715.

If the agreement is the product of eleventh hour negotiations or is agreed to on the eve of hearing, it may not bear the deliberateness and informed consent of a prior written agreement. The first time the court will hear the agreement is when it is dictated into the record.... [and] both the court and the parties may have difficulty remembering and understanding its terms. Finally, the potential for fraud, duress, or coercion is much greater where the agreement is not reduced to writing before being presented to the court.

*Id.* at 698–99, 403 S.E.2d at 715–16.

In *Hager v. Hager*, 190 W.Va. 399, 438 S.E.2d 579 (1993), we addressed the requirement for court analysis of an agreement of this nature, noting as follows:

This evaluation is not to be a perfunctory overview or rubber-stamp approval of the decisions of the parties. It must consist of a reasoned and thorough inquiry into the

---

**3.** West Virginia Code § 48–2–16(a) provides:

In cases where the parties to an action commenced under the provisions of this article have executed a separation agreement, if the court finds that the agreement is fair and reasonable, and not obtained by fraud, duress or other unconscionable conduct by one of the parties, and further finds that the parties,

through the separation agreement, have expressed themselves in terms which, if incorporated into a judicial order, would be enforceable by a court in future proceedings, then the court shall conform the relief which it is authorized to order under the provisions of sections thirteen and fifteen of this article to the separation agreement of the parties.

background financial status of the parties. To thereafter determine that the parties have resolved the issues in a fair and equitable manner, the court or family law master must examine the proposed resolution in light of evidence adduced regarding the financial status of the parties.

*Id.* at 401, 438 S.E.2d at 581.

■ In the present case, the Appellant asserts that there was truly no agreement, no meeting of the minds, and no settlement which could have formed the basis for the lower court's conclusions. To the extent that the alleged agreement contributed in any degree to the lower court's conclusions, the decision cannot stand. Once the lower court learned of the absence of agreement regarding the terms of the alleged settlement, the Rule 60(b) motion should have been granted, and reconsideration of the equitable division of the property should have been undertaken.[4]

### III. SEPARATION OF ONE YEAR

■ The Appellant also asserts that the lower court erred in granting a divorce based upon a one-year separation without requiring corroborating evidence regarding that length of separation. Although it is clear from the record that the parties have been separated for one year, the Appellant asserts that West Virginia Code § 48–2–10 (1996) requires grounds for divorce to be proved by witnesses other than the parties and states that a divorce shall not be granted on the uncorroborated testimony of the parties.[5] West Virginia Code § 48–2–10 provides as follows:

Such action shall be instituted and conducted as other actions, except as provided in this article. Process shall not issue until the complaint shall have been filed, which may be done at any time, notwithstanding a term of court is not then being held. All pleadings shall be verified by the party in whose name they are filed; but the complaint shall not be taken for confessed, and whether the defendant answers or not, the case shall be tried and heard independently of the admissions of either party in the pleadings or otherwise; and no judgment order shall be granted on the uncorroborated testimony of the parties or either of them. Costs may be awarded to either party as justice requires, and in all cases the court, in its discretion, may require payment of costs at any time, and may suspend or withhold any order until the costs are paid.

In *Murredu v. Murredu,* 160 W.Va. 610, 236 S.E.2d 452 (1977), *overruled on other grounds by Patterson v. Patterson,* 167 W.Va. 1, 277 S.E.2d 709 (1981), we encountered a situation in which the wife argued that the requirement of corroboration under West Virginia Code § 48–2–10 applies to a divorce based on the two-year separation ground set out in West Virginia Code § 48–2–4(a)(7) (1995). We agreed that the statutory corroboration requirement was applicable, reasoning that "[t]here is nothing in the two-year separation statute which would suggest otherwise." 160 W.Va. at 613, 236 S.E.2d at 455. We acknowledged that the Legislature was presumably aware of our Court's "uniform holdings that this statute requires some corroboration of the material facts on which the divorce grounds are based." *Id.* As we stated in *Marcum v. Marcum,* 113 W.Va. 374, 168 S.E. 389 (1933),

Common experience forces the observation that in divorce cases jurisdiction is apt to be, perhaps more frequently than any other fact, the subject of collusion. In view of the public interest in divorce proceedings, we can see no reason for not requiring

---

4. The Appellee contends that the final order was fair and equitable, regardless of the extent to which it may or may not have been based upon this alleged agreement. Perhaps the family law master and lower court would have resolved these issues in similar fashion even if this alleged agreement had never been mentioned. However, that is simply not the case. Once it became apparent that both parties did not assent to the alleged agreement, the process should have begun anew.

5. Such procedure, pursuant to West Virginia Code § 48–2–4(a)(10) (1996) is not required where the divorce is granted upon the grounds of irreconcilable differences. The Appellant, however, does not admit irreconcilable differences, and the divorce is not premised upon those grounds.

jurisdictional facts to be both pleaded and proved in strict conformity with the statute in its literal interpretation.

*Id.* at 378, 168 S.E. at 391. Thus, we conclude that the statutory requirement of corroboration was not satisfied in the present case. Prior to granting a divorce on the ground of one-year separation, such corroboration is required.

Based upon the foregoing, we reverse the decision of the lower court and remand this matter for reconsideration consistent with this opinion.

Reversed and remanded.