# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**Kimberly Jo Cole,**
**Petitioner Below, Petitioner**

**vs.) No. 21-0488** (Jackson County 21-D-AP-3)

**Belinda Anderson, Executrix of the**
**Estate of Dallas Ray Simons, deceased,**
**Respondent Below, Respondent**

## MEMORANDUM DECISION

Self-represented petitioner Kimberly Jo Cole appeals the June 2, 2021, order of the Circuit Court of Jackson County refusing her appeal from the April 26, 2021, agreed final order of the Family Court of Jackson County that granted petitioner a divorce from Respondent Dallas Ray Simons[1] and provided for the equitable distribution of marital assets between the parties. On appeal, petitioner challenges the equitable distribution. Respondent, by counsel Leah R. Chappell, filed a summary response. Petitioner filed a reply.

The Court has considered petitioner's brief and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, petitioner's brief, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

The parties were married in Jackson County on December 24, 1985, and they separated

---

[1] Petitioner's former husband, Dallas Ray Simons, was the respondent in petitioner's appeal at the time of its filing. Thereafter, Dallas Ray Simons passed away, and, by order entered on December 14, 2021, this Court substituted Belinda Anderson, Executrix of the Estate of Dallas Ray Simons, as the respondent. As petitioner's appeal arises out of a divorce proceeding, for simplicity, this Court will treat Dallas Ray Simons as the respondent herein.

on November 1, 2019. At the time of the parties' separation, petitioner was sixty years old, and respondent was seventy-nine years old. Thereafter, petitioner filed for divorce in the Family Court of Jackson County and asserted that the marital residence constituted her sole and separate property due to her purchase of the real property prior to the parties' marriage.

On March 23, 2020, the family court held an evidentiary hearing to determine whether the marital residence constituted marital property. Petitioner bought the real property known as 385 Panther Lane in 1982 prior to the parties' marriage. Beginning in 1984, the parties lived together on the property in a "trailer" that petitioner obtained from her father. Following the parties' marriage in 1985, a house was eventually constructed on the property. Respondent testified at the March 23, 2020, hearing that he aided in the construction of the house. The family court, by order entered on October 27, 2020, determined that the house constructed after the marriage constituted marital property. Respondent had the marital residence appraised, and it was valued at $20,000.

Also, at the March 23, 2020, hearing, respondent raised the issue of the marital portion of the retirement benefits being paid to petitioner. Respondent asserted that approximately 75% of petitioner's retirement constituted marital property. The family court, by an order entered on October 21, 2021, found that petitioner receives $1,520 per month in retirement benefits from the West Virginia Consolidated Public Retirement Board ("retirement board"). The family court further found that petitioner began her state employment in November of 1976 and retired in November 2013. Accordingly, due to the parties' marriage on December 24, 1985, the family court determined that 75.5% of petitioner's retirement[2] constituted marital property and that 75.5% of $1,520 is $1,146.85. Therefore, the family court directed petitioner to pay respondent the monthly sum of $573.42, which represents his half of the marital portion of petitioner's retirement, until further order of the court.[3]

On March 19, 2021, the family court held the final divorce hearing and noted that a proposed agreed final order was before it. The family court inquired of the parties as to whether they had reached an agreement to settle their divorce case. Petitioner informed the family court that a property settlement agreement had been reached. Accordingly, after each party was sworn, petitioner provided testimony regarding the terms of the property settlement agreement. Pursuant to the parties' agreement, petitioner would retain the following items as her sole personal property: (1) petitioner's jewelry; (2) funds in all bank accounts held in petitioner's name other

---

[2]The parties were married for approximately twenty-eight of petitioner's thirty-seven years of employment with the state, which constitutes approximately 75.5% of the time petitioner was employed by the state.

[3]The record reflects that at least one additional hearing occurred between the March 23, 2020, hearing and the entry of the family court's October 21, 2021, and October 27, 2020, orders. However, the March 23, 2020, hearing transcript is the only hearing transcript that petitioner includes in her appendix record. This Court, on its own motion, has obtained the video recording of the March 19, 2021, final divorce hearing.

than the City National Bank account held jointly with respondent; (3) other personal property in petitioner's possession and furnishings at the marital residence, except as otherwise noted; and (4) a Nissan Sentra that respondent would return to petitioner. Petitioner testified that the parties' agreement further provided that the funds in the parties' joint account at City National Bank belonged to respondent and that respondent will be allowed to retrieve the following items from the marital residence: (a) the remainder of respondent's clothes; (b) a pumpkin cookie jar that belonged to respondent's mother; (c) respondent's guns and gun cabinet; (d) a Ferguson 30 tractor; (e) a Suzuki Quad-Runner four-wheeler; and (f) a Toyota Tacoma.

Petitioner also affirmed that, pursuant to the parties' agreement, petitioner would retain the marital residence as her sole property, and the marital residence's appraised value would be included in the distribution of marital assets. Petitioner testified that, to equalize the distribution of marital assets, she would owe respondent $8,485. However, petitioner inquired as to whether the parties' federal and state tax refunds for 2020 were still in respondent's counsel's trust account. After checking with her staff, respondent's counsel represented that the 2020 tax refunds remained in her trust account and had not been included in the figures set forth in the proposed agreed final order.[4] Therefore, the parties agreed at the hearing that they would need to include the total amount of the 2020 tax refunds ($1,375) in the equitable distribution. Petitioner proposed that respondent retain petitioner's half of the 2020 tax refunds, provided that she could make fewer payments to respondent to equalize the distribution of assets. Respondent agreed to petitioner's proposal.

The parties agreed that petitioner owed respondent $4,472 to equalize the distribution of assets, excluding petitioner's retirement. In order to account for petitioner's monthly receipt of her retirement benefits prior to the entry of the family court's October 21, 2021, order, the parties further agreed that petitioner owed respondent $4,013 for his half of the marital portion of petitioner's retirement for the time period that the October 21, 2021, order was not in effect. Accordingly, petitioner testified that she understood that respondent would have a judgment against her in the total amount of the equalization payments (i.e., $4,472 plus $4,013, which equals $8,485). Thereafter, the parties agreed that petitioner received a credit in the amount of her half of the 2020 tax refunds ($687.50). Thus, due to that credit, the judgment entered against petitioner was $7,797.50 instead of $8,485 (i.e., $8,485 minus $687.50).

Accordingly, whereas the parties' proposed agreed final order provided that petitioner would make nineteen payments to respondent in the amount of $426.58 and a twentieth payment in the amount of $379.18, the agreed final order as entered by the family court provided that petitioner would make eighteen payments in the amount of $426.58 and a nineteenth payment in the amount of $119.06. Therefore, the modification of the parties' agreement at the final divorce hearing resulted in petitioner having to make one fewer payment to respondent and having to pay

---

[4]For the March 19, 2021, final divorce hearing, each of the parties appeared from his or her respective counsel's office via video conferencing.

a lesser amount in the final payment to equalize the distribution of assets.[5]

The parties agreed that there would be no interest on the judgment awarded to respondent unless petitioner failed to make an equalization payment. In the event that petitioner failed to make a payment, the parties' agreement provided that an interest rate of 4% would apply to the remaining judgment amount. Petitioner testified that, pursuant to the agreement, should she fail to make a payment, respondent could use legal methods to collect the amount(s) that she owed him.

Separate from the equalization payments, petitioner further testified that the parties agreed that she would continue to comply with the family court's October 21, 2021, order and pay respondent the monthly sum of $573.42, representing his half of the marital portion of petitioner's retirement. Petitioner testified that, pursuant to the parties' agreement, the family court would enter, and the retirement board would implement, a qualified domestic relations order ("QDRO") to divide the marital portion of her retirement between the parties. Once the QDRO was entered and implemented, petitioner's obligation to pay respondent the monthly sum of $573.42, pursuant to the October 21, 2021, order, would cease as respondent would receive his half of the marital portion of petitioner's retirement directly from the retirement board.

Finally, petitioner testified that she had ample opportunity to discuss the parties' agreement with her counsel. Petitioner affirmed that she, her counsel, and her counsel's paralegal sat down and "ran the numbers." Accordingly, petitioner further testified that she entered into the parties' agreement knowingly and intelligently. Respondent thereafter provided testimony which was consistent with petitioner's testimony regarding the parties' agreement, including the modification made at the final divorce hearing resulting in (1) a lower money judgment being entered against petitioner; (2) petitioner having to make one fewer equalization payment to respondent; and (3) petitioner having to pay a lesser amount in the final equalization payment. Therefore, at the end of the hearing, in addition to granting the parties a divorce due to irreconcilable differences, the family court found that the parties had placed their property settlement agreement on the record and that they each entered into the agreement freely, voluntarily, and intelligently. The family court determined that the parties' property settlement agreement was "fair and equitable within the meaning of West Virginia law." Accordingly, the family court adopted the parties' property settlement agreement.

On April 26, 2021, the family court entered the agreed final order that reflects the modifications the parties made to their property settlement agreement at the final divorce hearing. The family court noted that, at the hearing, the parties announced that "they had reached an agreement on all matters." Specifically, the family court found that "[t]he parties have entered into a property settlement agreement which was spread upon the record and is reduced to writing in this [o]rder." The family court further found:

---

[5]With regard to debts, the parties agreed that petitioner would carry no debts from the marriage and that the only debt belonging to respondent was the cost of the appraisal of the marital residence, which respondent stated was his sole debt.

The parties understand the terms of the agreement. The agreement was entered into voluntarily and was not obtained by fraud, duress, or other unconscionable conduct. The agreement is judicially enforceable and is incorporated into this order.[6] The agreement is fair and equitable[,] and the [c]ourt [o]rders the parties to abide by its terms. The parties have made financial disclosures sufficient to justify the court's findings and conclusions and have negotiated their agreement with the assistance of counsel.

(Footnote added.) On May 26, 2021, petitioner appealed the family court's agreed final order to the Circuit Court of Jackson County. The circuit court, by order entered on June 2, 2021, refused petitioner's appeal, finding that petitioner's skeletal argument failed to raise "any cognizable assignment of error committed by the [f]amily [c]ourt."

In reviewing a circuit court order refusing an appeal from a family court order, "we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo*." Syl., in part, *Carr v. Hancock*, 216 W. Va. 474, 607 S.E.2d 803 (2004).

On appeal, the parties dispute whether petitioner has complied with Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure, which provides, in pertinent part:

*Argument:* The brief must contain an argument exhibiting clearly the points of fact and law presented, the standard of review applicable, and citing the authorities relied on, under headings that correspond with the assignments of error. The argument must contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal. The . . . Supreme Court may disregard errors that are not adequately supported by specific references to the record on appeal.

As we previously have stated, "[a] skeletal 'argument,' really nothing more than an assertion, does not preserve a claim. . . . Judges are not like pigs, hunting for truffles buried in briefs." *State, Dep't of Health and Human Res., Child Advocate Office on Behalf of Robert Michael B. v. Robert Morris N.*, 195 W. Va. 759, 765, 466 S.E.2d 827, 833 (1995) (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)).

Based upon our review of petitioner's arguments, we find them to be disorganized and confusing. In addition, respondent specifically argues that petitioner raises issues on appeal that she failed to raise before the family court or circuit court. We have stated that "[t]his Court will

---

[6]Pursuant to the family court's April 26, 2021, agreed final order, the parties' property settlement agreement "is binding on the parties' heirs, successors, assigns, executors[,] and administrators."

not pass on a nonjurisdictional question which has not been decided by the trial court in the first instance." *Watts v. Ballard*, 238 W. Va. 730, 735 n.7, 798 S.E.2d 856, 861 n.7 (2017) (quoting Syl. Pt. 2, *Sands v. Sec. Trust Co.*, 143 W. Va. 522, 102 S.E.2d 733 (1958)).

However, "[w]hen a litigant chooses to represent [her]self, it is the duty of the trial court [and this Court] to insure fairness, allowing reasonable accommodations for the [self-represented] litigant so long as no harm is done an adverse party[.]" *State ex rel. Dillon v. Egnor*, 188 W. Va. 221, 227, 423 S.E.2d 624, 630 (1992) (internal quotations and citations omitted). Despite the disorganized and confusing nature of her arguments, it is obvious that petitioner challenges the equitable distribution of marital assets. We address that single issue herein. *See Franklin v. Pence*, 128 W. Va. 353, 356, 36 S.E.2d 505, 508 (1945) (recognizing that the assignments of error were general in nature making it "difficult to determine the exact points relied upon for reversal[,]" and causing the Court to rely upon "statements in the brief" that were "considered as indicating the main grounds of attack upon the judgment").

At the final divorce hearing, the family court had before it a proposed agreed final order as the parties had reached a property settlement agreement. The parties spread the terms of their agreement upon the record through the parties' testimony. We have held that,

> "[e]ven though there is an express legislative preference in divorce cases for a separation agreement to be in writing and signed by the parties, we do not prohibit *per se* the practice of orally placing on the record the terms of a separation agreement if certain conditions are met." Syl. Pt. 1, *Gangopadhyay v. Gangopadhyay*, 184 W. Va. 695, 403 S.E.2d 712 (1991).

> "Where an oral separation agreement is dictated on the record, additional inquiries must be made by . . . the family [court] to ascertain that the parties understand its terms and have voluntarily agreed to them without any coercion. Furthermore, . . . the family [court] must find that the terms of the agreement are fair and equitable. This latter inquiry requires a disclosure of the financial background of the parties sufficient to justify the conclusion of . . . the family [court]." Syl. Pt. 2, *Gangopadhyay v. Gangopadhyay*, 184 W. Va. 695, 403 S.E.2d 712 (1991).

Syl. Pts. 1 and 2, *Summers v. Summers*, 186 W. Va. 635, 413 S.E.2d 692 (1991).

Here, petitioner argues that the marital residence constituted her separate property—not a marital asset—and she also complains about the payments she had to make to respondent for his portion of petitioner's retirement prior to the implementation of the QDRO. We find that petitioner's arguments on appeal are contrary to the property settlement agreement that, according to petitioner's testimony, she entered into knowingly and intelligently. Specifically, petitioner testified that she, her counsel, and her counsel's paralegal sat down and "ran the numbers." Respondent similarly testified that the parties came to an agreement regarding "money matters." After thoroughly reviewing the recording of the final divorce hearing and the family court's agreed final order, we find no cause to disturb the family court's findings that

6

"[t]he parties understand the terms of the [property settlement] agreement" and that "[t]he agreement was entered into voluntarily and was not obtained by fraud, duress, or other unconscionable conduct."

We further concur with the family court's findings that the parties' property settlement agreement was fair and equitable. Pursuant to an appraisal, the marital residence was valued at $20,000. The family court, in its October 21, 2020, order, calculated the marital portion of petitioner's retirement. Upon inquiry from petitioner at the final divorce hearing, it was discovered that the parties needed to include their 2020 tax refunds in the equitable distribution. Thereafter, the parties agreed to modify the property settlement agreement in petitioner's favor, resulting in (1) a lower money judgment being entered against petitioner; (2) petitioner having to make one fewer equalization payment to respondent; and (3) petitioner having to pay a lesser amount in the final equalization payment. Accordingly, we find that the family court did not err in determining that "[t]he parties have made financial disclosures sufficient to justify" its findings that the property settlement agreement was fair and equitable. Thus, we conclude that the family court properly adopted and incorporated the parties' property settlement agreement, as modified at the final divorce hearing, into the agreed final order. Therefore, we further conclude that the circuit court properly refused petitioner's appeal from the family court's agreed final order.

For the foregoing reasons, we affirm the circuit court's June 2, 2021, order refusing petitioner's appeal from the family court's April 26, 2021, agreed final order granting the parties a divorce and providing for the equitable distribution of marital assets.

Affirmed.

**ISSUED:** September 20, 2022

**CONCURRED IN BY:**

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Justice C. Haley Bunn